# STATE OF MICHIGAN

# COURT OF APPEALS

---

VHS OF MICHIGAN, INC., doing business as
DETROIT MEDICAL CENTER,

       Plaintiff-Appellant,

v

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

       Defendant-Appellee.

UNPUBLISHED
October 19, 2017

No. 332448
Wayne Circuit Court
LC No. 14-014880-NF

---

LUCIA ZAMORANO, M.D., PLC,

       Plaintiff-Appellant,

v

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

       Defendant-Appellee.

No. 332629
Wayne Circuit Court
LC No. 14-010208-NF

---

Before: BECKERING, P.J., and MARKEY and RIORDAN, JJ.

PER CURIAM.

In Docket No. 332448, plaintiff VHS of Michigan, Inc., doing business as Detroit Medical Center (DMC), appeals by right an order granting summary disposition in favor of defendant, State Farm Mutual Automobile Insurance Company (State Farm). In Docket No. 332629, plaintiff Lucia Zamorano, M.D., PLC (Zamorano), appeals by right the same order. This Court consolidated the appeals.[1] We affirm.

---

[1] *VHS of Mich, Inc v State Farm Mut Auto Ins Co*, unpublished order of the Court of Appeals, entered June 22, 2016 (Docket Nos. 332448, 332629).

These cases arise from a March 14, 2014 motor vehicle accident in which Kimberley Warren was injured. State Farm was Warren's no-fault automobile insurer. Warren received medical treatment from DMC and Zamorano for her injuries suffered in the accident. DMC and Zamorano submitted their bills to State Farm; it did not pay them. DMC and Zamorano each filed a complaint against State Farm, seeking recovery of their medical bills pursuant to provisions of the no-fault act, MCL 500.3101 *et seq*. In each case, State Farm filed an answer denying liability and asserted numerous affirmative defenses. The actions filed by DMC and Zamorano were consolidated with each other and then with yet another action filed by Warren against State Farm and another driver involved in the accident.

On November 5, 2015, State Farm moved for summary disposition pursuant to MCR 2.116(C)(10). State Farm argued that Warren had obtained a discharge of her debts, including her medical expenses owed to DMC and Zamorano, in federal bankruptcy proceedings that Warren had initiated before she filed her lawsuit against State Farm and the other driver. Consequently, any right to no-fault personal protection insurance (PIP) benefits Warren previously had now belonged to her bankruptcy estate. Warren's debts to DMC and Zamorano were listed in the bankruptcy documents, and DMC and Zamorano received notice as creditors but never objected or became involved in the bankruptcy proceedings. Because Warren's debts to DMC and Zamorano were extinguished through her bankruptcy discharge, the medical expenses could not be considered "incurred" and were not recoverable as no-fault benefits. Thus, State Farm argued, it was entitled to summary disposition on the claims of DMC and Zamorano.

The trial court agreed and granted State Farm summary disposition on the ground that because the debts owed by its insured, Kimberley Warren, to DMC and Zamorano for medical expenses were discharged in federal bankruptcy proceedings and were therefore not medical expenses "incurred" for the purpose of the no-fault claims asserted by DMC and Zamorano. Whether DMC and Zamorano possessed a right of action under the no-fault act because they provided medical benefits to Warren was raised for the first time when State Farm filed as supplemental authority our Supreme Court's decision of *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191; 895 NW2d 490 (2017). Because this issue was not decided by the lower court or briefed by the parties, we decline to address its possible application to this case. Rather, we review the dispositive issues that were decided below.

A trial court's decision on a motion for summary disposition is reviewed de novo. *Johnson v Recca*, 492 Mich 169, 173; 821 NW2d 520 (2012). The trial court granted summary disposition to State Farm pursuant to MCR 2.116(C)(10) (no genuine issue of material fact) on the basis of the discharge of Warren's debts in federal bankruptcy proceedings. In deciding such a motion, a court must consider the pleadings, admissions, affidavits, and other evidence submitted by the parties in the light most favorable to the nonmoving party. *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). "Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id*. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen. Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

Questions of statutory interpretation are reviewed de novo. *Johnson*, 492 Mich at 173; *In re Petition of Attorney General for Investigative Subpoenas*, 274 Mich App 696, 698; 736 NW2d 594 (2007). A statute's unambiguous language must be applied as written. *White v Harrison-White*, 280 Mich App 383, 387; 760 NW2d 691 (2008); *In re Petition of Attorney General for Investigative Subpoenas*, 274 Mich App at 698. Similarly, the interpretation of an insurance policy presents a question of law that is reviewed de novo. *Dancey v Travelers Prop Cas Co*, 288 Mich App 1, 7; 792 NW2d 372 (2010). "Because insurance policies are contractual agreements, they are subject to the same rules of contract interpretation that apply to contracts in general." *Sherman-Nadiv v Farm Bureau Gen Ins Co of Mich*, 282 Mich App 75, 78; 761 NW2d 872 (2008). Like statutes, the unambiguous terms of a contract must be enforced as written. *Century Surety Co v Charron*, 230 Mich App 79, 82-83; 583 NW2d 486 (1998). A court must "give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 468; 663 NW2d 447 (2003).

MCL 500.3107(1)(a) provides that PIP benefits are payable for "[a]llowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." Thus, an expense must be "incurred" to become a recoverable benefit under the no-fault act. *Bombalski v Auto Club Ins Ass'n*, 247 Mich App 536, 541; 637 NW2d 251 (2001). An expense is incurred if the insured is responsible or answerable in law for the expense, i.e., legally obligated to pay the expense. *Id*. at 542-543; *Duckworth v Continental Nat'l Indemnity Co*, 268 Mich App 129, 134; 706 NW2d 215 (2005). "When an insured has no legal responsibility for disputed medical costs, those expenses are not 'incurred' by the insured within the meaning of MCL 500.3107(1)(a) and they are not subject to payment by the no-fault insurer." *Farm Bureau Gen Ins v Blue Cross Blue Shield of Mich*, 314 Mich App 12, 22; 884 NW2d 853 (2015).

In the present case, Warren's debts to DMC and Zamorano for the medical expenses at issue were discharged in federal bankruptcy proceedings. Upon issuance of the order of discharge, Warren no longer was legally obligated to pay the medical charges of DMC and Zamorano. See 11 USC 727(b) (providing that a federal bankruptcy discharge generally discharges the debtor from all debts that arose before the date of the order for relief). Because the DMC's and Zamorano's charges were discharged in the bankruptcy proceedings, and Warren has no legal obligation to pay the charges, the medical expenses are not "incurred" within the meaning of MCL 500.3107(1)(a). Zamorano contends that even if the services it provided Warren are not incurred expenses, Zamorano has incurred the expenses itself. This argument lacks merit. "Charges for healthcare services rendered are not 'incurred' by a healthcare provider because a provider is not subject to charges for the products, services, and accommodations it delivers to others." *Covenant*, 500 Mich at ___; 895 NW2d at 499. Because the medical expenses at issue are not "incurred," DMC and Zamorano have no viable no-fault claim.

DMC argues that it did not receive proper notice of the bankruptcy proceedings and that this Court should therefore construe the federal bankruptcy court's discharge order as not discharging DMC's debt. We disagree. DMC failed to make a timely presentation of evidence below that it lacked notice of the bankruptcy filing. In response to State Farm's motion for summary disposition, DMC provided an affidavit of its director of patient accounting, Carey,

who indicated only that DMC discontinued the use of its Detroit post office box billing address in March 2012 and began using a billing address through Chase Bank in Carol Stream, Illinois, in March 2012. Absent from this affidavit is any averment that DMC did not receive notice of Warren's bankruptcy filing. Only when moving for reconsideration of the summary disposition ruling did DMC provide an affidavit stating that DMC did not receive actual notice of Warren's bankruptcy filing before the deadline for filing of objections with the bankruptcy court. Our review of the trial court's decision is limited to the evidence that was presented to the trial court at the time the motion was decided. *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 120; 839 NW2d 223 (2013); see also *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 474 n 6; 776 NW2d 398 (2009) (a trial court properly declined to consider affidavits first presented in support of a motion for reconsideration); *Pena v Ingham Co Rd Comm*, 255 Mich App 299, 310; 660 NW2d 351 (2003) (this Court "only consider[s] what was properly presented to the trial court before its decision on the motion [for summary disposition]."). Hence, DMC's contention that it lacked notice of the bankruptcy filing was not timely supported.

Even if DMC failed to receive proper notice of the bankruptcy filing, we would not be required to construe the bankruptcy court's discharge order as inapplicable to Warren's debt to DMC. Notably, DMC has not moved in federal bankruptcy court to reopen the bankruptcy case under 11 USC 350(b) ("A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause."). This is likely because such a motion would have been unsuccessful under Sixth Circuit precedent. "In a Chapter 7 no-asset case such as this, reopening the case merely to schedule an omitted debt is for all practical purposes a useless gesture. Under these circumstances, amending the schedule is pointless because . . . the debt is discharged and reopening the case and scheduling the debt cannot affect that fact." *In re Madaj*, 149 F3d 467, 468 (CA 6, 1998)(Quotation marks, brackets, and citations omitted.) "In a Chapter 7 no-asset case, . . . the creditors cannot recover from the estate because there is nothing to recover." *Id*. at 470. That is, reopening a debtor's Chapter 7 no-asset "case to permit the amendment of the schedules can have no effect whatsoever. The debt . . ., listed or not, is discharged." *Id*. at 472. In the present case, it is undisputed that Warren had over two dozen creditors and no nonexempt assets. Under *In re Madaj*, the debt to DMC was discharged even if DMC did not receive proper notice. This Court is bound to follow *In re Madaj* as a matter of federal law. See *In re Hamilton*, 540 F3d 367, 375 (CA 6, 2008) (holding "a state-court judgment that modifies a bankruptcy court's discharge order is void ab initio . . . .").

Next, DMC and Zamorano both argue that even a valid bankruptcy discharge would not permit State Farm to avoid liability for the medical expenses. DMC and Zamorano cite 11 USC 524(e), which states: "Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." But the plain language of this provision does not create a liability that does not otherwise exist. Here, State Farm is not liable because the medical expenses were not incurred under the no-fault act. The reliance of DMC and Zamorano on 11 USC 524(e) is thus misplaced.

DMC and Zamorano further contend that a provision of State Farm's policy precludes State Farm from asserting Warren's bankruptcy discharge as a defense. In particular, the policy states: "Bankruptcy or insolvency of the *insured* or his or her estate will not relieve *us* of *our* obligations under this policy." This provision says that the insured's bankruptcy does not relieve State Farm of its *obligations* under the policy. As explained, State Farm is not obligated under

the policy to pay the medical expenses at issue because those expenses were not incurred within the meaning of the no-fault act. The policy expressly provides that State Farm's obligation to pay PIP benefits is "subject to the provisions of the *No-Fault Act*[.]" Because the medical expenses at issue are not "incurred" under the no-fault act, State Farm has no obligation under its policy to pay those expenses. DMC and Zamorano suggest that this conclusion renders nugatory the insolvency provision of the policy. It does not. Warren's bankruptcy does not relieve State Farm of its obligations under the policy to Warren. Rather, the bankruptcy order of discharge absolves Warren of any obligation to pay DMC and Zamorano so that the medical charges are not incurred under the no-fault act. MCL 500.3107(1)(a); *Farm Bureau Gen Ins*, 314 Mich App at 22. In this case, it is the fact that the expenses have not been incurred that forecloses the plaintiffs' no-fault claims.

DMC and Zamorano further assert that their no-fault claims remain valid under the policy's bankruptcy or insolvency clause because this result is mandated by MCL 500.3006. We again disagree. MCL 500.3006 applies to "liability insurance policies" and has no bearing on the no-fault claims at issue here.

We affirm. As the prevailing party, State Farm may tax its costs pursuant to MCR 7.219.

/s/ Jane M. Beckering
/s/ Jane E. Markey
/s/ Michael J. Riordan