# STATE OF MICHIGAN

# COURT OF APPEALS

---

FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN,

        Plaintiff/Counter Defendant-
        Appellee/Cross Appellant,

v

BLUE CROSS BLUE SHIELD,

        Defendant/Cross Defendant-
        Appellant.

and

SPECTRUM HEALTH CONTINUING CARE,
and SPECTRUM REHAB AND NURSING
CENTER,

        Defendant/Counter Plaintiff-Cross
        Plaintiff/Cross Appellee.

UNPUBLISHED
November 17, 2015

No. 322423
Ingham Circuit Court
LC No. 12-001225-CK

---

Before: Gadola, P.J., and Hoekstra and M. J. Kelly, JJ.

PER CURIAM.

        Defendant Blue Cross Blue Shield (hereinafter Blue Cross) appeals as of right the order denying its motion for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact) and granting summary disposition under MCR 2.116(C)(10) to plaintiff Farm Bureau General Insurance Company of Michigan (hereinafter Farm Bureau) against Blue Cross. Farm Bureau cross appeals from that same order, which denied its motion for summary disposition under MCR 2.116(C)(10) against Spectrum Health Continuing Care and Spectrum Rehab and Nursing Center (hereinafter Spectrum) and granted Spectrum's motion for summary disposition under MCR 2.116(C)(10) against Farm Bureau. This case concerns a payment dispute regarding skilled nursing facility services that were provided to Farm Bureau's and Blue Cross's insured, Julie Klein, by Spectrum. Farm Bureau paid the claims under protest and then initiated this declaratory action against Blue Cross and Spectrum. All three parties moved for summary disposition. The trial court determined that Blue Cross was responsible for payment of the services. We conclude that, under the terms of Spectrum's skilled nursing facility

-1-

participation agreement with Blue Cross, Spectrum assumed financial responsibility for the services it provided Klein, and Blue Cross has no obligation to reimburse Farm Bureau. Further, because Spectrum is responsible for the expense of Klein's treatment, those treatment costs were not "incurred" by Klein, and thus Farm Bureau is not liable for these amounts under Michigan's No-Fault Act, MCL 500.3101 *et seq.* Consequently, with respect to Blue Cross's appeal, we reverse, and with respect to Farm Bureau's cross appeal we also reverse.

## I. FACTS AND PROCEDURAL HISTORY

On October 22, 2011, Julie Klein was in a serious automobile accident and sustained grave injuries. At the time, Klein was covered under a Blue Cross health insurance policy and a no-fault coordinated automobile insurance policy with Farm Bureau that was designated excess and only paid for services not covered by Klein's health insurance policy. Spectrum is a skilled nursing facility, and it is under contract with Blue Cross as an approved facility subject to a participation agreement with Blue Cross. Klein received treatment at Spectrum following her automobile accident. Although Blue Cross initially approved, and paid for 14 days of treatment at Spectrum, Blue Cross subsequently denied Spectrum's preapproval request for additional time at the facility. Rather than appeal Blue Cross's denial or seek payment from Klein individually, Spectrum submitted Klein's claim to Farm Bureau, which paid under protest. At issue in the present case is whether Blue Cross, Farm Bureau, or Spectrum must bear the costs of Klein's treatment at Spectrum.

Relevant to this dispute, under the terms of Klein's policy, Blue Cross will not pay for "custodial care." However, the policy does provide benefits for "skilled care and related physician services in a skilled nursing facility" at a participating skilled nursing facility, for a period of time that is "necessary for the proper care and treatment of the patient up to a maximum of 120 days per calendar year." The policy also states that a "service must be medically necessary to be covered," and that the medical necessity determination would be made by

> physicians acting for BCBSM, based on criteria and guidelines developed by physicians for BCBSM who are acting for their respective provider type or medical specialty, that:
>
> – The covered service is accepted as necessary and appropriate for the patient's condition. It is not mainly for the convenience of the member or physician.

In addition, Klein's policy with Blue Cross states that Blue Cross will not pay for "[t]hose services which you legally do not have to pay . . . ." The policy also contained a limitation on the ability of Klein to bring legal suits against Blue Cross, as follows:

> Legal action against us may not begin later than two years after we have received a complete claim for services. No action or lawsuit may be started until 30 days after you notify us that our decision under the claim review procedure is unacceptable.

Aside from Klein's Blue Cross policy, as noted, Blue Cross also had a contractual agreement with Spectrum in its capacity as a participating skilled nursing facility. Pursuant to this agreement, Spectrum is required to follow Blue Cross's pre-authorization requirements, i.e., the process by which the medical provider seeks approval for payment from Blue Cross prior to rendering the medical service. Under the terms of the agreement, Spectrum can appeal an initial denial of a pre-authorization request but that such an appeal must be filed within 30 days of the initial decision. Moreover, to obtain payment, Spectrum must submit any claims for services within 180 days of the date of service. In terms of payment for services, the agreement expressly states that "[e]xcept for copayments and deductibles, [Spectrum] will accept the BCBSM payment as full payment for Covered Services, and for any Out-of-Panel Services . . . and agrees not to collect any further payment, except as set forth in Addendum G." Under Addendum G, an insured may be billed for:

1. Noncovered services, *underlined unless* *the service has been deemed a noncovered service solely as a result of a determination by a Physician acting for BCBSM that the service was not Medically Necessary, in which case, Facility assumes full financial responsibility for the denied claims.* Facility may bill the Member for claims denied as Medically Unnecessary only as stated in paragraph 2., below;

2. Services determined by BCBSM to be Medically Unnecessary, where the Member acknowledges that BCBSM will not make payment for such services, and the Member has assumed financial responsibility for such services in writing and in advance of the receipt of such services[.] [Italics added.]

In addition, under Addendum F of the agreement, Spectrum agreed to cooperate with Blue Cross in the coordination of coverage from other sources, and to first bill the entity responsible for providing primary coverage to the patient.

In this case, Klein was admitted to Spectrum's facility on November 28, 2011. Spectrum sought pre-certification from Blue Cross, and Blue Cross approved Klein's stay at Spectrum's facility for 14 days. However, Blue Cross stated that pre-certification would need to be re-sought for any length of stay at Spectrum's facility beyond fourteen days. Near the conclusion of Klein's initial 14-day stay, Spectrum sought further pre-certification from Blue Cross for an additional 14 days. However, Blue Cross denied this request after its reviewing physician, Dr. Lopamudra Patel, determined that these services could not be considered medically necessary because Klein was not functioning at a level that would allow her to benefit from skilled nursing services at that time. Dr. Patel informed Spectrum that pre-certification could again be sought in two weeks, and that if Klein's condition had improved, then pre-certification may again be authorized. Blue Cross sent a letter to Klein's family informing them of its decision and Klein's right to appeal, and Blue Cross also informed Spectrum of its denial.

Neither Klein nor Spectrum sought a review of Blue Cross's decision. Further, no subsequent pre-certification approvals for Klein's treatment were sought from Blue Cross after the two week period had elapsed. At no time did Klein acknowledge in writing that she was assuming financial responsibility for continued treatment involving denied claims for non-

covered services.  Nonetheless, Spectrum continued Klein's treatment and Spectrum made the decision to simply bill Farm Bureau for the services provided to Klein after December 12, 2011. Farm Bureau paid these claims under protest to avoid incurring interest and penalty fees under the no-fault act.[1]

After paying these claims, Farm Bureau filed the instant action against Blue Cross and Spectrum.  All three parties moved for summary disposition.  Relevant to the present appeal, Farm Bureau argued that Blue Cross was responsible for providing primary medical care to Klein, meaning that Spectrum should have looked to Blue Cross, not Farm Bureau, for payment of Klein's medical bills.  According to Farm Bureau, it was entitled to a return of sums paid from either Spectrum or Blue Cross.  In contrast, among other arguments, Blue Cross maintained that, under the terms of its participating provider agreement, Spectrum had assumed financial responsibility for Klein's treatment such that Klein had no legal responsibility to pay and, under the terms of Klein's policy, Blue Cross could not be held liable for services for which Klein did not have to pay.

The trial court concluded that Spectrum was entitled to payment for services rendered to Klein, and that Blue Cross was responsible for the payment of these bills.  The trial court thus granted summary disposition to Spectrum on Farm Bureau's claim, stating that "it appears that the dispute really lies between Blue Cross/Blue Shield and the secondary insurer, Farm Bureau." The trial court then granted Farm Bureau's motion for summary disposition on its claim against Blue Cross and the court required Blue Cross to reimburse Farm Bureau, finding that, as the primary insurer, Blue Cross was required to pay for all of Klein's care in 2011 and the first 120 days of 2012.[2]

## II.  STANDARD OF REVIEW

This Court reviews the grant or denial of summary disposition de novo.  *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).  "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint."  *Id*. at 120.  A motion under MCR 2.116(C)(10) is properly granted if the evidence fails to establish a genuine issue of any material fact.  *Allison v AEW Capital Mgmt LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).  "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party."  *Id.*

---

[1] Unlike Blue Cross, who has contractual limits on the amount it pays to skilled nursing providers like Spectrum, Farm Bureau paid the full Spectrum rates, meaning that Spectrum received substantially more money for its services from Farm Bureau than it would have received if Blue Cross had paid.

[2] Initially, the trial court stated it would only require Blue Cross to pay Farm Bureau the amount Blue Cross would have paid Spectrum under its participating provider agreement and not the full Spectrum rates that Farm Bureau paid.  However, when the trial court released its order it modified this ruling and required Blue Cross to reimburse Farm Bureau for the full amount that Farm Bureau had paid to Spectrum.

The interpretation of an insurance contract is a question of law that is reviewed de novo. *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 353; 596 NW2d 190 (1999). "[I]nsurance policies are subject to the same contract construction principles that apply to any other species of contract." *Rory v Continental Ins Co*, 473 Mich 457, 461; 703 NW2d 23 (2005). "The primary goal in the construction or interpretation of any contract is to honor the intent of the parties." *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 473; 663 NW2d 447 (2003) (citation omitted). Contract language is given its ordinary and plain meaning, *Royal Prop Group, LLC v Prime Ins Syndicate, Inc*, 267 Mich App 708, 715; 706 NW2d 426 (2005), and courts must "give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." *Klapp*, 468 Mich at 468, 476. "If the contractual language is unambiguous, courts must interpret and enforce the contract as written[.]" *In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008).

## III. ANALYSIS

The present dispute involves the interplay between a health insurance policy and a coordinated no-fault insurance policy. Specifically, the parties agree that, as a general proposition, Blue Cross was primary in terms of liability for Klein's medical expenses. Nonetheless, on appeal, Blue Cross argues that the trial court erred by granting Farm Bureau's motion for summary disposition because Blue Cross reasonably denied Klein's claims based on Blue Cross's determination of medical necessity in keeping with the plain language of its policy. In contrast, Farm Bureau maintains that Blue Cross, as Klein's health insurer, is primary for the payment of Klein's medical expenses, including the expenses at issue. Alternatively, both Farm Bureau and Blue Cross also argue that, by virtue of its provider agreement with Blue Cross, Spectrum assumed financial liability for Klein's expenses that were denied by Blue Cross in connection with the preapproval process as not being medically necessary. Based on the assertion that Spectrum is liable for these expenses, Blue Cross and Farm Bureau maintain that they have no obligation to pay these medical expenses. For the reasons discussed below, we conclude that Spectrum assumed liability for the expenses at issue and that, in these unique circumstances, neither Blue Cross nor Farm Bureau has an obligation to pay Klein's expenses.

Under MCL 500.3109a, when an individual has health insurance, the individual may purchase a coordinated no-fault automobile insurance policy at a reduced premium. *Smith v Physicians Health Plan, Inc*, 444 Mich 743, 749; 514 NW2d 150 (1994). The intent of this provision is to eliminate duplicative recovery for services and to contain insurance and health care costs. *Id.* When no-fault coverage and health insurance are coordinated, the health insurer is primarily liable for the insured's medical expenses. *Am Med Sec, Inc v Allstate Ins Co*, 235 Mich App 301, 304; 597 NW2d 244 (1999). In these circumstances, "the no-fault insurer is not subject to liability for medical expense that the insured's health care insurer is required, under its contract, to pay for or provide." *Tousignant v Allstate Ins Co*, 444 Mich 301, 303; 506 NW2d 844 (1993). It follows that, if an insured chooses to coordinate no-fault and health coverage under MCL 500.3109a, the insured is required "to obtain payment and services from the health insurer to the extent of the health coverage available from the health insurer." *Id.* at 307-308. Further, when payment for medical services is governed by a contract between a health care provider and a health insurer, the provider is bound by the terms of the agreement. See *Dean v Auto Club Ins Ass'n*, 139 Mich App 266, 274-275; 362 NW2d 247 (1984). Payment in keeping with the terms of the agreement constitutes payment in full, and neither the insured nor the health

care provider can look to a no-fault insurer for additional payment for covered services. See *Williams v AAA Mich*, 250 Mich App 249, 269; 646 NW2d 476 (2002); *Dean*, 139 Mich App at 271-275; see also MCL 550.1502(1).

Although an insured with a coordinated no-fault policy must first utilize health care insurance for services offered under the health insurance policy, the insured may seek reimbursement from the no-fault insurer for " 'allowable expenses' that were not contractually required to be provided by the health care provider." *Sprague v Farmers Ins Exch*, 251 Mich App 260, 270; 650 NW2d 374 (2002). The liability of a no-fault insurer for such services is determined under the no-fault act, which provides that "an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle . . . ." MCL 500.3105(1). In particular, insurance benefits are payable for "[a]llowable expenses consisting of all reasonable charges *incurred* for reasonably necessary products, services and accommodations for an injured person's care recovery, or rehabilitation." MCL 500.3107(1)(a) (emphasis added). As used in this provision, to " 'incur' means [t]o become liable or subject to, [especially] because of one's own actions." *Proudfoot v State Farm Mut Ins Co*, 469 Mich 476, 484; 673 NW2d 739 (2003) (alteration in *Proudfoot*); see also *Shanafelt v Allstate Ins Co*, 217 Mich App 625, 638; 552 NW2d 671 (1996). When an insured has no legal responsibility for disputed medical costs, those expenses are not "incurred" by the insured within the meaning of MCL 500.3107(1)(a) and they are not subject to payment by the no-fault insurer. See *Duckworth v Contl Nat Indem Co*, 268 Mich App 129, 136; 706 NW2d 215 (2005); *Bombalski v Auto Club Ins Assn*, 247 Mich App 536, 543; 637 NW2d 251 (2001).

In this case, it is undisputed that Klein had a coordinated no-fault policy with Farm Bureau and that, as a result of this coordinated policy, Blue Cross was primary with respect to the payment of Klein's medical bills. See *Am Med Sec, Inc*, 235 Mich App at 304. Under Klein's policy with Blue Cross, as a general matter, Klein was eligible for up to 120 days per year of care at a skilled nursing facility, provided that care during that period was "necessary for the proper care and treatment of the patient." Given that Blue Cross provided coverage for these services, Klein had an obligation to seek such coverage from Blue Cross before turning to Farm Bureau for payment. See *Tousignant*, 444 Mich at 307-308. Furthermore, by virtue of its participating provider agreement with Blue Cross, Spectrum agreed to accept payment from Blue Cross under the agreement as full payment for its services, Spectrum agreed to abide by Blue Cross's pre-certification requirements, and, most notably, Spectrum assumed "full financial responsibility" for claims denied as being medically unnecessary, unless the insured "acknowledges that BCBSM will not make payment for such services, and the [insured] has assumed financial responsibility for such services in writing and in advance of the receipt of such services."

In our judgment, these provisions are clear and unambiguous, and they are dispositive with respect to Spectrum's entitlement to payment from both Farm Bureau and Blue Cross. That is, with respect to Farm Bureau, the effect of Spectrum's participating provider agreement is to relieve Klein from responsibility for paying for Spectrum's services, and, because Klein has no legal responsibility for the medical costs, Farm Bureau has no obligation to pay for these expenses under MCL 500.3107(1)(a). Specifically, it is undisputed that Spectrum initially obtained Blue Cross's pre-approval for Klein to spend 14 days at Spectrum. After that 14 day period, Blue Cross denied an additional request for preapproval based on the determination that

-6-

the services were not medically necessarily. Although there were mechanisms in place for Klein or Spectrum to contest Blue Cross's denial, no challenge was made to the denial. Spectrum also wholly failed to seek additional preapproval for the ongoing services it provided to Klein in the coming months, despite Spectrum's contractual obligation to abide by Blue Cross's pre-certification requirements. Moreover, there is no indication that Klein, or anyone acting on her behalf, agreed, in writing, to assume financial responsibility for the services denied by Blue Cross. Instead, Spectrum simply turned to Farm Bureau for payment.

However, under the terms of Spectrum's provider agreement, once its request for preapproval of these services had been denied as not being medically necessary, Spectrum contractually assumed financial liability for the services rendered and it was contractually prohibited from attempting to bill Klein individually for these services unless Klein assumed responsibility in writing, which she did not do.[3] Spectrum's decision not to contest Blue Cross's medical necessity denial and its decision not to seek preapproval at a later time does not, without the assumption of liability by Klein, render Farm Bureau liable as a secondary payer. Instead, given that the terms of Blue Cross's provider agreement with Spectrum expressly relieved Klein of any legal responsibility for the costs at hand, it follows that these expenses were not "incurred" by Klein, and thus Farm Bureau is not liable for payment of these claims under MCL 500.3107(1)(a). See *Duckworth*, 268 Mich App at 136; *Bombalski*, 247 Mich App at 543. Consequently, the trial court erred by granting summary disposition to Spectrum and by denying Farm Bureau's motion for summary disposition against Spectrum.[4]

---

[3] Spectrum had any number of options open to it under the participating provider agreement to avoid assuming liability for Klein's expenses. For example, if Spectrum or Klein had reason to dispute Blue Cross's denial, they should have appealed that decision or, if Klein's condition improved, they could have once again sought preapproval from Blue Cross before providing services. Or, if Spectrum believed Blue Cross's denial on medical necessity grounds to be proper, in keeping with the participating provider agreement, Spectrum should have obtained Klein's written assumption of liability for such services before attempting to submit those bills to Farm Bureau. From the record below, it appears that it was the existence of a secondary insurer, i.e., Farm Bureau, which prompted Spectrum not to take other action or to seek review of Blue Cross's denial. For example, Spectrum's pre-authorization manager, Cynthia Ingersoll, testified that, had Farm Bureau not been available as a secondary payer, she would have spoken to Klein's family and likely would have appealed Blue Cross's denial of pre-authorization. But, quite simply, the existence of Klein's no-fault policy does not relieve Spectrum from its obligation to comply with the terms of its participating provider agreement. See *Dean*, 139 Mich App at 274; MCL 550.1502. If Spectrum wanted to avoid liability for providing services which Blue Cross had deemed not medically necessary, it should have taken steps to procure payment from Blue Cross or to have Klein assume liability. Thus, contrary to Spectrum's arguments in its brief on appeal, it did not do everything "right."

[4] Spectrum asserts on appeal that Farm Bureau cannot recoup funds paid to Spectrum because its voluntary payment of Klein's bill precludes recovery. See generally *Montgomery Ward & Co v Williams*, 330 Mich 275, 284-285; 47 NW2d 607 (1951) ("[W]here money has been voluntarily

For similar reasons, on the facts of this case, we are persuaded that Blue Cross cannot be held liable for Klein's medical bills. That is, Klein's health insurance policy specifically reserves for Blue Cross the right to determine medical necessity by a physician acting for Blue Cross based on standards that have been determined by Blue Cross physicians. In this case, after approving two weeks of care, when Spectrum again sought pre-certification, Blue Cross's physician, Dr. Patel, made the determination that Blue Cross would not cover the services because they could not be considered medically necessary given Klein's lack of progress to enable her to benefit from skilled therapy. After that denial, Spectrum and Klein failed to challenge Blue Cross's decision, Spectrum did not seek additional preapproval before providing additional services despite its contractual obligation to do so, and Spectrum did not obtain Klein's agreement, in writing, that she would assume responsibility for services which Blue Cross determined not to be medically necessary. Far from contesting Blue Cross's denial of Klein's various claims, Spectrum indicates on appeal that it "ultimately agreed with that decision."[5] In these circumstances, under the terms of its agreement, Spectrum assumed financial responsibility for the services it provided to Klein, and Blue Cross had no obligation to pay Klein's bills,[6] or to reimburse Farm Bureau. Consequently, the trial court erred by denying Blue Cross's motion for summary disposition and by granting summary disposition to Farm Bureau as against Blue Cross.

Reversed and remanded for entry of summary disposition in favor of Blue Cross and for entry of summary disposition in favor of Farm Bureau in relation to its claims against Spectrum. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Joel P. Hoekstra
/s/ Michael J. Kelly

---

paid with full knowledge of the facts, it cannot be recovered on the ground that the payment was made under a misapprehension of the legal rights and obligations of the person paying[.]" (citation omitted)). Contrary to this argument, consistent with Farm's Bureau's assertions on appeal, we conclude that Farm Bureau may recover this sum because it made payment based on a mistake of fact, namely based on the mistaken belief that Spectrum was entitled to payment for services rendered to Klein. See *Wilson v Newman*, 463 Mich 435, 441; 617 NW2d 318 (2000). As discussed, this is not the case because Spectrum assumed liability for the cost of Klein's care in accordance with the terms of the participating provider agreement, and thus Farm Bureau's payment of Klein's bills under protest does not preclude its recovery of those funds from Spectrum. See *id.*

[5] Given Dr. Patel's opinion as well as Blue Cross's ability to deny claims that were not medically necessary, we see no basis for concluding that Blue Cross wrongfully denied Klein's claims and thus there is no basis to conclude that Blue Cross had an obligation to pay for Klein's services.

[6] Indeed, once Spectrum assumed responsibility, Klein had no legal obligation to pay, and Klein's policy with Blue Cross specifies that Blue Cross will not pay for "[t]hose services which [Klein] legally do[es] not have to pay . . . ."