# STATE OF MICHIGAN

# COURT OF APPEALS

ST. JOHN MACOMB OAKLAND HOSPITAL,

Plaintiff-Appellant,

v

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

Defendant-Appellee.

FOR PUBLICATION
December 8, 2016
9:00 a.m.

No. 329056
Macomb Circuit Court
LC No. 2014-002692-NF

Before: JANSEN, P.J., and CAVANAGH and BOONSTRA, JJ.

JANSEN, P.J.

Plaintiff appeals as of right the order granting defendant's motion for reconsideration and dismissing the case. We reverse and remand for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

This case arises from injuries sustained by the insured, Nuo Dusaj, during a December 9, 2011 car accident. Dusaj maintained a policy of no-fault insurance with defendant, and he had coordinated no-fault insurance and health insurance. His no-fault policy provided that the no-fault benefits would be reduced by an amount "paid or payable" under Dusaj's health insurance plan. Dusaj suffered a closed head injury during the accident, and a physician recommended that Dusaj be admitted to plaintiff's partial day hospitalization program for closed head injuries. Dusaj was admitted to the program, and plaintiff filed a claim with Dusaj's health insurer, Blue Cross Blue Shield of Michigan (Blue Cross), for payment of benefits for services Dusaj received starting on May 6, 2013.

On November 14, 2013, Magellan Behavioral of Michigan, Inc. (Magellan), which was authorized to administer Blue Cross's mental health program, sent a letter to Dusaj, informing him that the partial hospitalization treatment was not medically necessary and that Magellan was unable to authorize the treatment. The letter explained that a physician advisor, who is a board certified psychiatrist, came to that determination after reviewing the medical record. The letter further indicated that an internal appeal was available as the first step in the appeals process and that a patient, provider, or facility may request an appeal.

An attached document detailed the provider appeal rights. The document explained that a provider may request an internal appeal within 180 days after receipt of the denial letter and that a determination would be made within 30 calendar days. The document indicated that "[i]f treatment services are imminent or ongoing, or the patient's condition is unstable or emergent, an expedited appeal may be requested verbally and conducted telephonically. . . . We reply to urgent appeals within the lesser of one business day or 72 hours." The document further stated that if the provider disagrees with the internal appeal determination, the provider may request an external review within 30 calendar days of the appeal decision letter. An independent review organization would then review the request, and the provider would be notified of the decision within 30 days of the receipt of the request.

On January 9, 2014, a representative for plaintiff sent a letter to Magellan, indicating that a similar denial letter was needed with regard to an October 22, 2012 partial hospitalization admission in order for plaintiff to request that defendant pay for the partial hospitalization treatment related to the October 22, 2012 admission.

After seeking payment from defendant, plaintiff filed a complaint in the trial court, contending that defendant breached the no-fault contract by refusing to pay no-fault benefits for the medical services plaintiff provided to Dusaj. Defendant filed a motion for summary disposition under MCR 2.116(C)(10), contending that plaintiff failed to make reasonable efforts to obtain payment from Blue Cross/Magellan. Defendant argued that plaintiff failed to provide any evidence regarding what plaintiff submitted to Blue Cross/Magellan or that plaintiff sought an appeal of the medical necessity determination.

Plaintiff filed a response opposing defendant's motion for summary disposition, in which plaintiff contended that its January 9, 2014 follow-up letter to Magellan demonstrated that it made reasonable efforts, but that Blue Cross/Magellan refused to pay for the services. The court issued an opinion and order denying defendant's motion for summary disposition on the basis that there was a genuine issue of material fact on the issue of reasonable efforts. The court reasoned as follows:

> Defendant, in effect, argues that plaintiff has just not tried hard enough to convince [Blue Cross] to pay for the medical treatments, and in this regard is therefore not entitled to benefits from State Farm. It appears that plaintiff hospital was not convinced that [Blue Cross]/Magellan's multi-tiered appeal process was going to net them any beneficial results. Plaintiff was not seeking duplicative coverage, and it made reasonable efforts to obtain payments from [Blue Cross]/Magellan to no avail. The Court finds a question of fact as to whether plaintiff hospital made reasonable efforts to obtain payments, and whether the multi-tiered review and appeal process could be considered beyond reasonable.

Defendant subsequently filed a motion for reconsideration, arguing that plaintiff failed to submit evidence showing that it made reasonable efforts to obtain payment from Blue Cross/Magellan and contending that the court's prior opinion improperly shifted the burden of proof onto defendant to demonstrate that Blue Cross/Magellan made an incorrect determination and that Blue Cross's policy should cover plaintiff's claim. The court agreed, and in a two-page opinion and order, the court determined that it had improperly shifted the burden of proof onto

-2-

defendant and that plaintiff failed to present any evidence demonstrating that it made reasonable efforts to obtain payment from Blue Cross/Magellan. Therefore, the court granted the motion for reconsideration and dismissed the case.

## II. STANDARD OF REVIEW

We review for an abuse of discretion a trial court's decision on a motion for reconsideration. *Frankenmuth Ins Co v Poll*, 311 Mich App 442, 445; 875 NW2d 250 (2015). " 'An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes.' " *Id*. (citation omitted). We review de novo the trial court's ruling on a motion for summary disposition. *Id*. "The trial court properly grants a motion for summary disposition under MCR 2.116(C)(10) when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id*.

> When a motion under subrule (C)(10) is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, judgment, if appropriate, shall be entered against him or her. [MCR 2.116(G)(4).]

## III. REASONABLE EFFORTS STANDARD

The issue presented in this case is whether plaintiff supplied evidence that it made reasonable efforts to obtain payments that were available from Blue Cross/Magellan before seeking benefits from defendant. Specifically, the parties dispute whether plaintiff was required to appeal Blue Cross/Magellan's medical necessity determination before seeking payment from defendant. Plaintiff argues that the trial court abused its discretion when it granted defendant's motion for reconsideration and dismissed the case, and that plaintiff was not required to appeal the denial of its claim for health insurance benefits. We agree.

The trial court dismissed the case following reconsideration of its opinion and order denying defendant's motion for summary disposition. MCR 2.119(F), the court rule governing motions for reconsideration, provides:

> (1) Unless another rule provides a different procedure for reconsideration of a decision . . . a motion for rehearing or reconsideration of the decision on a motion must be served and filed not later than 21 days after entry of an order deciding the motion.

> (2) No response to the motion may be filed, and there is no oral argument, unless the court otherwise directs.

> (3) Generally, and without restricting the discretion of the court, a motion for rehearing or reconsideration which merely presents the same issues ruled on by the court, either expressly or by reasonable implication, will not be granted. The moving party must demonstrate a palpable error by which the court and the

parties have been misled and show that a different disposition of the motion must result from correction of the error.

The issue in this case is governed by the no-fault act, MCL 500.3101 *et seq*. MCL 500.3105(1) provides, "Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter." MCL 500.3107(1)(a) adds, in part, that personal protection insurance (PIP) benefits are payable for "[a]llowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation."

MCL 500.3109a provides that an individual may coordinate his no-fault insurance policy and health insurance policy at a reduced premium rate. MCL 500.3109a; *Farm Bureau Gen Ins Co v Blue Cross Blue Shield of Mich*, 314 Mich App 12, 21; 884 NW2d 853 (2015). "The intent of [MCL 500.3109a] is to eliminate duplicative recovery for services and to contain insurance and healthcare costs." *Farm Bureau*, 314 Mich App at 21. When an individual chooses to coordinate his no-fault coverage and health insurance coverage, the health insurer becomes primarily liable for medical expenses. *Id*. In that circumstance, the no-fault insurer is not liable for the medical expenses that the health insurer is required to pay for or provide. *Tousignant v Allstate Ins Co*, 444 Mich 301, 303; 506 NW2d 844 (1993). Thus, the individual is required to obtain payment from the health insurer "to the extent of the health coverage *available* from the health insurer." *Id*. at 307 (emphasis added). Our Supreme Court has stated that the term "payable," which appears in the no-fault contract at issue in this case, is the functional equivalent of the phrase "required to be provided." *Id*. at 312. In *Tousignant*, our Supreme Court cited its previous decision in *Perez v State Farm Mut Auto Ins Co*, 418 Mich 634, 645; 344 NW2d 773 (1984), for the proposition that the phrase "required to be provided" "means that the *injured person is obliged to use reasonable efforts to obtain payments that are available*." *Id*. (quotation marks omitted). Thus, a plaintiff must make reasonable efforts to obtain payments that are available from the health insurer in order for the plaintiff to establish that the benefits are not payable by the health insurer. See *id*.

The parties dispute what actions plaintiff was required to take in order to establish that it made reasonable efforts to obtain payment from Blue Cross. In *Tousignant*, the plaintiff coordinated her no-fault insurance with her health insurance, which was provided through a health maintenance organization (HMO). *Tousignant*, 444 Mich at 303-304. The plaintiff sought treatment outside of her HMO plan. *Id*. at 305. The no-fault insurer informed the plaintiff that it would only cover medical care by a physician outside of the HMO if a physician within the HMO referred her to the out-of-network physician. *Id*. The plaintiff did not contend that necessary care was unavailable. *Id*. The no-fault insurer refused to pay for the services, contending that the services were required to be provided by the HMO. *Id*. Our Supreme Court concluded that because the plaintiff did not claim that the HMO would not or could not provide the medical care she needed, there was no basis for concluding that the benefits were not required to be provided by the health insurer. *Id*. at 312-313.

The Court's decision in *Tousignant* suggests that a plaintiff must take some action toward receiving payment from the health insurer before seeking payment from the no-fault insurer. However, the Court did not specify the exact actions that a plaintiff must take in order to

establish that the plaintiff made reasonable efforts to obtain payment from the health insurer. The plaintiff in *Tousignant* made no efforts to obtain available benefits from her HMO, thus leading our Supreme Court to hold that there was no basis to conclude that the benefits were not available. See *Tousignant*, 444 Mich at 312-313. In contrast, in this case, plaintiff *did* attempt to obtain payment of medical expenses when it filed a claim with Blue Cross/Magellan. The denial letter indicates that plaintiff submitted medical records to Blue Cross/Magellan, which a physician reviewed in determining that the treatment was not medically necessary. There is no indication that plaintiff failed to follow the proper procedure for filing the claim. Following the denial of the claim, plaintiff contended that the partial day hospitalization treatment was unavailable because Blue Cross/Magellan denied its claim under a medical necessity standard. Plaintiff did not seek duplicative recovery from Blue Cross and defendant, but instead, sought to obtain payment from the insured's no-fault insurer after the insured's health insurer denied payment. Accordingly, we conclude that plaintiff made reasonable efforts to obtain payment from Blue Cross/Magellan and that plaintiff was not required to appeal the medical necessity determination in order to establish that it made reasonable efforts to obtain payments that were available from the health insurer.

We find that the reasoning in this Court's recent opinion in *Adanalic v Harco Nat'l Ins Co*, 309 Mich App 173, 176-178; 870 NW2d 731 (2015), applies in this context. In *Adanalic*, this Court decided the issue whether a no-fault insurer was excused from paying benefits because the plaintiff had a workers' compensation claim that he could pursue even after an initial denial of workers' compensation benefits. *Id*. at 184-185. Both the no-fault insurer and the workers' compensation insurer denied the plaintiff benefits for his injuries. *Id*. at 178. The relevant statute at issue in the case provided that when workers' compensation benefits are available to an employee sustaining an injury in the course of employment, then no-fault benefits are not available. *Id*. at 186.

Although the issue in *Adanalic* did not involve the reasonable efforts standard, this Court briefly discussed the reasonable efforts requirement, stating that the standard " 'does not, in light of the underlying purpose of the no-fault act, call for a potentially lengthy and costly effort . . . .' " *Adanalic*, 309 Mich App at 186 n 8, quoting *Perez*, 418 Mich at 650.[1] This statement leads us to conclude that a plaintiff does not need to engage in the potentially lengthy and costly effort of challenging a medical necessity determination in order to obtain health insurance benefits before proceeding to obtain payment from the no-fault insurer.

Further, in determining whether the no-fault insurer was responsible for payment of the plaintiff's expenses, this Court reasoned as follows:

---

[1] Although *Adanalic* involved workers' compensation benefits, our Supreme Court in *Tousignant* cited its earlier decision in *Perez* in articulating the reasonable efforts standard, suggesting that the standard is the same in both contexts. See *Tousignant*, 444 Mich at 312; *Perez*, 418 Mich at 645-646 (opinion by Levin, J.).

Both the workers' compensation system and the no-fault system are intended to provide limited, but *prompt* payment of benefits to injured persons in order to assure medical care, rehabilitation, and income replacement. It is [the no-fault insurer's] position that when the employer and the no-fault insurer disagree on which of these two systems is primarily applicable, the injured person is to receive no benefits at all until each of the two insurers is satisfied that its assertion of denial has been fully adjudicated. We reject the notion that because an individual may be covered by two broad systems of insurance, he is not entitled to any benefits whatsoever for however long it takes to adjudicate a dispute about which system is obligated to provide benefits. Indeed, requiring an employee to engage in lengthy workers' compensation litigation before being paid PIP benefits "is wholly inadequate to accomplish the no-fault act's purpose of providing assured, adequate, and prompt recovery for economic loss arising from motor vehicle accidents." [*Adanalic*, 309 Mich App at 187 (citation omitted; emphasis added).]

This Court went on to explain that the term "available" was used in order to prevent duplicative recovery under both workers' compensation and no-fault insurance, and that there was no duplicative recovery because the plaintiff was denied workers' compensation benefits. *Id*. at 188. Accordingly, this Court concluded that workers' compensation benefits were not available and that the plaintiff's no-fault insurer was not entitled to withhold payment of PIP benefits. *Id*. at 189.

Although this Court's decision in *Adanalic* involved workers' compensation benefits, its reasoning applies equally in this case. As in *Adanalic*, plaintiff did not receive payment because neither insurer took responsibility for payment of the insured's medical expenses. The purpose of the no-fault act cannot be met by requiring an injured person to engage in a potentially lengthy appeals process with the health insurance company. Defendant's position would prevent an injured person from receiving benefits from the no-fault insurer until the insured adjudicated the health insurer's denial. This is entirely at odds with the policy underlying the no-fault act to ensure prompt payment for economic losses. Further, the purpose of the coordinated benefits statute is to prevent duplicative recovery, and plaintiff would not receive benefits from two sources in this case because Blue Cross/Magellan denied plaintiff's claim. Therefore, we conclude that a plaintiff is not required to appeal a health insurer's medical necessity determination in order to establish that reasonable efforts were made to obtain payment from the health insurer.

Defendant relies, in large part, on this Court's recent decision in *Farm Bureau* for the proposition that plaintiff was required to appeal the denial. In *Farm Bureau*, the insured, Judy Klein, received skilled-nursing services from Spectrum Health Rehab and Nursing Center (Spectrum). *Farm Bureau*, 314 Mich App at 14. Klein's health insurer was Blue Cross, and Blue Cross had a participation agreement with Spectrum under which Spectrum assumed financial responsibility for the services that it provided to the insured. *Id*. The agreement required Spectrum to follow Blue Cross's preauthorization requirements and detailed the appeals process for an initial denial of a preauthorization request. *Id*. at 16. Blue Cross approved and paid for 14 days of skilled-nursing treatment, but denied Spectrum's request for additional time.

*Id*. at 14-15. Instead of appealing that decision, Spectrum submitted the claim to Farm Bureau, which was Klein's no-fault insurer. *Id*. at 15. Farm Bureau paid under protest. *Id*.

This Court concluded that under the "unique circumstances" in the case involving Spectrum's assumption of liability for the medical expenses, neither the no-fault insurer nor the health insurer was responsible for payment of the medical expenses. *Farm Bureau*, 314 Mich App at 20-21. This Court explained that the provisions in the agreement between Blue Cross and Spectrum were dispositive because Spectrum had agreed to assume full financial responsibility for claims that were denied as medically unnecessary, unless the insured accepted financial responsibility in writing. *Id*. at 23. This Court explained that "with respect to Farm Bureau, the effect of Spectrum's participating provider agreement is to relieve Klein from responsibility for paying for Spectrum's services, and, because Klein has no legal responsibility for the medical costs, Farm Bureau has no obligation to pay for these expenses under MCL 500.3107(1)(a)." *Id*.

This Court noted, during its discussion of the issue, that although there were mechanisms permitting Klein or Spectrum to contest the denial of the preauthorization request, neither Klein nor Spectrum challenged the denial. *Farm Bureau*, 314 Mich App at 24. Indeed, the evidence in the record suggested that Spectrum did not seek an appeal of the denial because there was a secondary insurer. *Id*. at 24 n 3. This Court explained, "Spectrum's decision not to contest Blue Cross's medical necessity denial and its decision not to seek preapproval at a later time does not, without the assumption of liability by Klein, render Farm Bureau liable as a secondary payer." *Id*. at 24-25. Instead, since Klein did not have any legal responsibility for the payment, the payment was not "incurred" by her, and Farm Bureau was not liable as Klein's no-fault insurer. *Id*. at 25.

*Farm Bureau* does not control the outcome in this circumstance because the dispositive fact in *Farm Bureau* was Spectrum's contract with Blue Cross. This Court concluded that because Spectrum contracted with Blue Cross to assume financial liability for the claim, the insured party did not "incur" the expense, and, therefore, Farm Bureau was not liable for the expense under MCL 500.3107(1)(a). *Farm Bureau*, 314 Mich App at 23. In contrast, there is no indication that plaintiff had a similar participation agreement with Blue Cross or Magellan indicating that plaintiff would assume full financial responsibility for medical services deemed medically unnecessary. Although this Court in *Farm Bureau* mentioned the fact that Spectrum did not appeal the medical necessity determination, this Court's discussion of the issue pertained to the fact that Spectrum could have attempted to avoid liability under the provider agreement by seeking an appeal of Blue Cross's decision. *Id*. at 24 n 3. This Court did not suggest that an insured person or a provider *must* seek an appeal of a health insurer's decision in order to pursue payment from a no-fault insurer. Instead, the holding of *Farm Bureau* is limited to the "unique circumstance" of the provider agreement between Spectrum and Blue Cross. Accordingly, *Farm Bureau* does not require that an individual or a provider appeal a medical necessity determination in order to establish that reasonable efforts were made to obtain payments that were available from the health insurer.

## IV. MOTION FOR RECONSIDERATION

We conclude that the trial court abused its discretion by granting the motion for reconsideration. The court improperly concluded that it shifted the burden of proof onto

defendant in its previous opinion. Instead, in its initial opinion and order, the court noted that plaintiff presented evidence regarding whether it made reasonable efforts to obtain payment from Blue Cross/Magellan. The trial court's initial conclusions did not constitute improper burden shifting. The court also erroneously concluded, without explanation, that plaintiff failed to present evidence establishing that it made reasonable efforts to obtain payment from Blue Cross/Magellan. Contrary to the trial court's determination, plaintiff presented evidence establishing that it sought payment from Blue Cross/Magellan and that its claim for benefits was denied on the basis that the treatment was not medically necessary. We therefore conclude that plaintiff presented sufficient evidence to establish that it made reasonable efforts to obtain payment from Blue Cross/Magellan. We further conclude that plaintiff was not required to present evidence that it appealed the denial in order to establish that it made reasonable efforts to obtain payment from Blue Cross/Magellan. To conclude otherwise would be contrary to the purpose of the no-fault act to provide for assured, adequate, and prompt recovery for economic losses stemming from motor vehicle accidents.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Mark J. Cavanagh
/s/ Mark T. Boonstra

-8-