*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MEEMIC INSURANCE COMPANY,

Plaintiff-Appellant,

v

CHRISTIAN CARE MINISTRY, INC.,

Defendant-Appellee.

FOR PUBLICATION
June 9, 2022
9:05 a.m.

No. 356739
Kent Circuit Court
LC No. 20-005054-NZ

Before: RONAYNE KRAUSE, P.J., and M.J. KELLY and YATES, JJ.

YATES, J.

The no-fault act, MCL 500.3101 *et seq.*, permits an individual with health coverage to buy a coordinated no-fault automobile insurance policy at a reduced price, which makes sense because when no-fault insurance and health coverage are coordinated, the health insurer is primarily liable for the insured's medical expenses. Under MCL 500.3109a, coordination of coverage occurs with "other health and accident coverage on the insured," meaning that the insured must obtain payment and services from the health insurer if health coverage is available. Josephus Vanderlinden bought no-fault insurance at a lower price from Plaintiff Meemic Insurance Company (Meemic) based on inclusion of a coordination provision. But Vanderlinden does not have traditional health insurance. He participates in Medi-Share, a program administered by Defendant Christian Care Ministry, Inc. (CCM), which operates as a voluntary health care sharing ministry under Michigan law. The trial court ruled that coordination does not apply to Medi-Share. We agree, and so we affirm.

## I. FACTUAL BACKGROUND

On May 9, 2019, Josephus Vanderlinden suffered severe injuries in an automobile accident. At that time, he had no-fault insurance under a policy issued by Plaintiff Meemic, and he was also a member of Medi-Share—a program administered by Defendant CCM. As his medical expenses resulting from the accident mounted, Meemic stepped in and paid more than

$685,000 to cover those costs in the form of PIP benefits.[1] Then Meemic filed this action against CCM, alleging that CCM was obligated by MCL 500.3109a and Meemic's coordination-of-coverage policy language to bear the primary responsibility for Vanderlinden's medical expenses. CCM moved for summary disposition under MCR 2.116(C)(10) in the trial court, which notified the parties of MCL 550.1865 contained in the Health Care Sharing Ministries Freedom to Share Act, MCL 550.1861 *et seq.*, and requested supplemental briefing on the effect of that statute. After receiving supplemental briefs and hearing oral argument, the trial court granted CCM's motion for summary disposition by ruling that Medi-Share qualifies as a health care sharing ministry and, as a result, is neither an insurer nor subject to the insurance laws of the State of Michigan, including coordination of coverage under MCL 500.3109a. Meemic appealed that ruling.

## II. LEGAL ANALYSIS

The trial court awarded summary disposition to Defendant CCM under MCR 2.116(C)(10) solely on the basis of the Health Care Sharing Ministries Freedom to Share Act, MCL 550.1861 *et seq.*, and particularly upon language in MCL 550.1867. "We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A summary disposition motion under MCR 2.116(C)(10) "tests the *factual sufficiency* of a claim." *Id.* at 160. When addressing such a motion, "a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id.* "A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact." *Id.* "'A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ.'" *Id.* With these standards in mind, we must take up what largely amounts to an issue of statutory interpretation.

Plaintiff Meemic contends that the coordination-of-coverage provision in the no-fault act, MCL 500.3109a, coupled with the coordination-of-coverage language in Josephus Vanderlinden's automobile insurance policy, dictates the outcome of the summary disposition motion. In contrast, Defendant CCM insists that language from the Health Care Sharing Ministries Freedom to Share Act in MCL 550.1867 controls the outcome of the motion for summary disposition by prohibiting coordination of coverage with its Medi-Share program. Thus, we must wrestle with two separate statutory schemes. "In every case requiring statutory interpretation, we seek to discern the ordinary meaning of the language in the context of the statute as a whole." *TOMRA of North America, Inc v Dep't of Treasury*, 505 Mich 333, 349; 952 NW2d 384 (2020). And if a potential conflict between two statutory schemes arises, " 'it is our duty to, if reasonably possible, construe them both so as to give meaning to each; that is, to harmonize them.' " *Id.*, quoting *Nowell v Titan Ins Co*, 466 Mich 478, 483; 648 NW2d 157 (2002) (interpreting no-fault act). Finally, "[i]nsurance policy provisions that conflict with statutes are invalid[,]" *Corwin v DaimlerChrysler Ins Co*, 296 Mich App 242, 261; 819 NW2d 68 (2012), so the competing statutory provisions—rather than the

---

[1] The term "PIP benefits" may seem odd to an uninitiated reader of no-fault decisions because that acronym cannot readily be derived from "personal protection insurance." But the acronym is used "by convention" to avoid confusion with property protection insurance benefits, which are called PPI benefits. *McKelvie v Auto Club Ins Ass'n*, 459 Mich 42, 44 n 1; 586 NW2d 395 (1998). PIP benefits are also known as "first party" benefits. See *id.*

language in any insurance policy or agreement—must drive our analysis. See *Bronson Health Care Group, Inc v State Auto Prop and Cas Ins Co*, 330 Mich App 338, 343; 948 NW2d 115 (2019).

Plaintiff Meemic frames resolution of this dispute as nothing more than a straightforward application of coordination of coverage under MCL 500.3109a. According to that statute, "when an individual has health insurance, the individual may purchase a coordinated no-fault automobile insurance policy at a reduced premium." *Farm Bureau Gen Ins Co v Blue Cross Blue Shield of Mich*, 314 Mich App 12, 21; 884 NW2d 853 (2016). Josephus Vanderlinden did exactly that when he bought no-fault insurance from Meemic, and he received a break on the cost of his premium as a result. But "[w]hen no-fault coverage and health insurance coverage are coordinated, the health insurer is primarily liable for the insured's medical expenses." *Id.* That is, " 'the no-fault insurer is not subject to liability for medical expense that the insured's health care insurer is required, under its contract, to pay for or provide.' " *Id.* Accordingly, "if an insured chooses to coordinate no-fault and health coverage under MCL 500.3109a, the insured is required 'to obtain payment and services from the health insurer to the extent of the health coverage available from the health insurer.' " *Id.* Thus, argues Meemic, Vanderlinden must look to Defendant CCM and its Medi-Share program to obtain payment and services for the medical consequences of his accident.

But Defendant CCM cites MCL 550.1867 in the Health Care Sharing Ministries Freedom to Share Act in an effort to avoid coordination of coverage under the no-fault act. As a matter of Michigan law, a health care sharing ministry is a faith-based arrangement that involves "matching its participants who have financial or medical needs with participants who have the ability to assist in meeting those needs according to criteria established for the ministry by the eligible entity." See MCL 550.1867(b). A health care sharing ministry "[p]rovide[s] for the financial or medical needs of a participant through voluntary contributions by its participants." See MCL 550.1867(c). Thus, a health care sharing ministry runs on a voluntary system of payments to meet financial or medical needs of its participants.[2] Moreover, MCL 550.1867(g) requires a health care sharing ministry to furnish a written disclaimer to actual and potential participants stating that it "is not an insurance company and the financial assistance provided through the ministry is not insurance[.]"[3] Also, the disclaimer must explain that each "participant who receives assistance from the ministry for his or her financial or medical needs remains personally responsible for the payment of all of his or her medical bills and other obligations incurred in meeting his or her financial or medical needs." See MCL 550.1867(g). Citing the language of the mandatory disclaimer, CCM insists

---

[2] To be sure, the Medi-Share program at issue in this case contemplates that each member will pay a "monthly share" to provide for administrative expenses and the needs of other members. Beyond that, the program guidelines set up a tiered system of monthly shares that takes into account health risks and age, so Medi-Share makes some effort to equate monthly shares with likely needs.

[3] Our Legislature has not only dictated that "[a]n eligible entity may establish and operate a health care sharing ministry under this act[,]" i.e., the Health Care Sharing Ministries Freedom to Share Act, see MCL 550.1865, but also made clear that "[a]n eligible entity that establishes and operates a health care sharing ministry in compliance with this act is not engaged in the business of insurance in this state and the entity and ministry are not subject to the insurance laws of this state." *Id.*

that participants in its Medi-Share program have neither insurance nor coverage for their medical expenses because their participation guarantees them no payments and, instead, leaves them "personally responsible" for their medical expenses. *Id.*

If Defendant CCM is correct, Josephus Vanderlinden's contractual promise of coordination of coverage made to Plaintiff Meemic was just illusory,[4] and the reduced premium he paid for no-fault coverage afforded him an indefensible windfall. But CCM cannot be blamed for that result if Michigan law excuses CCM from coordination of coverage under the no-fault act. We must now determine how to harmonize the no-fault act and the Health Care Sharing Ministries Freedom to Share Act by considering whether coordination of coverage under MCL 500.3109a and health care sharing on a voluntary basis under MCL 550.1867 can coexist. We begin with first principles. As a matter of Michigan law, "[c]oordination of no-fault and health coverages is optional." *Tousignant v Allsate Ins Co*, 444 Mich 301, 307; 506 NW2d 844 (1993). Any person "who desires duplicative medical coverage from no-fault and health insurers can, by not coordinating and thus paying higher premiums, contract for coverage both by a no-fault insurer and a health insurer." *Id.* "Insureds who coordinate, and thus pay a reduced premium, however, are deemed to have made the health insurer the 'primary' insurer respecting injuries in an automobile accident." *Id.* Josephus Vanderlinden made that election when he bought no-fault insurance with coordination of coverage from Meemic, which cannot be declared "primary" if Vanderlinden had "other health and accident coverage" as that term is used in MCL 500.3109a(1). See *Owens v Auto Club Ins Ass'n*, 444 Mich 314, 317; 506 NW2d 850 (1993).

What constitutes "other health and accident coverage" is a matter of recurring debate, see *Jarrad v Integon Nat'l Ins Co*, 472 Mich 207, 212-217; 696 NW2d 621 (2005), but the breadth of "other health and accident coverage" is not coterminous with the concept of health insurance. *Id.* at 217. "[T]he Legislature used the broader term 'coverage' rather than 'insurance[,]' " *id.*, so the inquiry "is *not* whether an insurance company *actually* provided the coverage, but rather whether the coverage is *typically* provided by an insurance company." *Id.* Many forms of benefits have fit comfortably under the umbrella of "other health and accident coverage." For instance, "Medicare is sufficiently similar to an insurance policy to constitute 'health and accident coverage.'" *Id.*, citing *LeBlanc v State Farm Mut Auto Ins Co*, 410 Mich 173, 205; 301 NW2d 775 (1981). In the same manner, "military benefits and HMO benefits have been treated as sufficiently akin to insurance to constitute health and accident coverage." *Id.*, citing *Tatum v Gov't Employees Ins Co*, 431 Mich 663, 669-670; 431 NW2d 391 (1988) and *United States Fidelity & Guaranty Co v Group Health Plan of Southeast Michigan v Group Health Plan*, 131 Mich App

---

[4] We cannot necessarily ascribe impure motives to Josephus Vanderlinden because he might have thought he had coverage through Medi-Share that could be coordinated with his no-fault insurance. But the Medi-Share program guidelines distributed to actual and prospective members make clear that members have no right to anything, that they are "solely responsible for the payment of" their medical bills, and that "no Member may or shall be compelled to make sharing contributions" to aid them.

268, 272-273; 345 NW2d 683 (1983). Also, our Supreme Court has ruled that self-funded long-term-disability plans amount to "health and accident coverage." *Jarrad*, 472 Mich at 218-224.

Despite the long line of cases fitting a wide variety of benefit programs into the term "other health and accident coverage" to provide for coordination of coverage under MCL 500.3109a, we conclude that allowing coordination of coverage with what a health care sharing ministry provides is a bridge too far. To determine whether what a health care sharing ministry provides should be characterized as "other health and accident coverage," we must consider "whether the coverage is *typically* provided by an insurance company." *Jarrad*, 472 Mich at 217. Under MCL 550.1867, which prescribes the requirements for a health care sharing ministry, "[w]hether any participant in the ministry chooses to assist another participant who has financial or medical needs is totally voluntary."[5] MCL 550.1867(g). Needless to say, no coverage "*typically* provided by an insurance company" depends solely on the generosity of others. See *Jarrad*, 472 Mich at 217. Beyond that, MCL 550.1867(g) expressly mandates that each participant in a health care sharing ministry "who receives assistance from the ministry for his or her financial or medical needs remains personally responsible for the payment of all of his or her medical bills and other obligations incurred in meeting his or her financial or medical needs." This arrangement is the antithesis of coverage, which by its very nature provides protection against personal financial responsibility. Finally, what a health care sharing ministry offers to its participants cannot even be regarded as something akin to self-insurance because no participant indemnifies himself or herself to satisfy medical expenses. See *Jarrad*, 472 Mich at 219. In sum, we can find no basis to characterize what a health care sharing ministry provides to its participants as "other health and accident coverage" for purposes of coordination of coverage under the no-fault act, MCL 500.3109a. Our Legislature placed its imprimatur upon health care sharing ministries operating entirely outside the insurance system and providing assistance to the participants on a purely voluntary basis. Therefore, it should come as no surprise that health care sharing ministries do not furnish "other health and accident coverage" within the contemplation of the no-fault act for purposes of coordination of coverage under MCL 500.3019a.[6]

---

[5] By statute, a health care sharing ministry "means a program established by an eligible entity for the sharing of finances and health care in compliance with this act[,]" i.e., the Health Care Sharing Ministries Freedom to Share Act. See MCL 550.1863(b). An "'eligible entity' means a faith-based, nonprofit entity that maintains tax-exempt status under section 501(c) of the internal revenue code, 26 USC 501." MCL 550.1863(a).

[6] To the extent that health care sharing ministries exist outside the insurance system in the State of Michigan and provide assistance based entirely upon voluntary contributions, they may present a moral hazard. They can charge members for administrative expenses and take on members without regard to the risks associated with those members, yet they cannot be held liable when one of their members suffers a catastrophic injury and requires immense payments for medical care. Because health care sharing ministries can disclaim liability, the medical costs may wind up being borne by either the injured member or an insurer or health-care provider. But our Legislature has chosen to authorize health care sharing ministries to operate in that way, and we are not empowered to overrule that choice simply because it presents an inevitable risk.

Affirmed.

/s/ Christopher P. Yates
/s/ Amy Ronayne Krause
/s/ Michael J. Kelly