*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MAPLE MANOR REHAB CENTER OF NOVI,
INC. and MAPLE MANOR NEURO CENTER,
INC.,

UNPUBLISHED
July 21, 2022

Plaintiffs-Appellees/Cross-Appellants,

v

No. 355775
Washtenaw Circuit Court
LC No. 17-001178-NF

TRAVELERS CASUALTY & SURETY
COMPANY,

Defendant-Appellant/Cross-Appellee.

Before: MARKEY, P.J., and BOONSTRA and RIORDAN, JJ.

PER CURIAM.

Defendant/cross-appellee Travelers Casualty & Security Company (Travelers) appeals by right the judgment entered by the trial court awarding plaintiffs/cross-appellants Maple Manor Rehab Center of Novi, Inc. (Maple Manor Rehab), and Maple Manor Neuro Center, Inc. (Maple Manor Neuro) (collectively, plaintiffs), $757,871.11 in damages, $276,069.28 in penalty interest, $136,290 in attorney fees, and $3,765.84 in taxable costs. Specifically at issue in this appeal is Travelers' challenge to the trial court's order denying its motion for summary disposition under MCR 2.116(C)(10) and granting summary disposition in favor of plaintiffs under MCR 2.116(I). We affirm in part, reverse in part, vacate in part, and remand the matter to the trial court for further proceedings.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

James Bourdage (Bourdage) was injured in a motor vehicle accident in July 2014, while a passenger in his employer's vehicle. The vehicle was insured under a commercial insurance policy issued by Travelers. Bourdage suffered catastrophic injuries, including a traumatic brain injury that left him "in a permanent vegetative state." Bourdage's wife was appointed as his guardian and conservator. After initially receiving care at another rehabilitation facility, Bourdage was transferred to Maple Manor Rehab in April 2015. Because Bourdage was Maple Manor Rehab's first patient to receive medical services under Michigan's no-fault insurance act, MCL 500.3101

-1-

*et seq.*, the facility hired billing consultant Susan Taylor to determine what to charge for Bourdage's care and treatment and to negotiate with Travelers a price for Bourdage's care. Taylor testified at her deposition that she and Amy Driscoll, Travelers' claims adjustor for Bourdage, agreed to an all-inclusive rate of $3,800 per weekday and $1,520 per weekend day. Subsequently, Taylor and Driscoll negotiated a 10% discounted rate, reducing the rate to $3,420 per weekday and $1,368 per weekend day. Travelers made payments of approximately $667,735.24 to Maple Manor Rehab, which covered Bourdage's care from April 1, 2015 until October 31, 2015. Although Bourdage remained at Maple Manor Rehab until August 31, 2016, Travelers did not pay for any of the care or treatment he received after October 31, 2015.

In March 2016, Bourdage's attorney filed a complaint for coverage against Travelers in Washtenaw Circuit Court.[1] In November 2017, the trial court entered a stipulated order for dismissal of the action without prejudice; the order provided that Bourdage should refile the complaint within one week of the dismissal, and that the reinitiated case would, for purposes of the one-year-back rule of MCL 500.3145, involve expenses incurred on or after March 4, 2015.[2] Bourdage refiled the case on November 21, 2017, seeking to recover all no-fault personal protection insurance (PIP) benefits due and owing, statutory interest of 12% per annum on all overdue benefits, and reasonable attorney fees for Travelers' allegedly unreasonable refusal to pay or delay in payment.

On September 14, 2018, plaintiffs, Bourdage, and Travelers entered into a litigation agreement according to which Bourdage would assign his right to collect no-fault benefits to plaintiffs, plaintiffs and Bourdage would execute a "Hold-Harmless Agreement," and plaintiffs would then substitute for Bourdage in the pending litigation. The agreement provided that, should the trial court deny the motion to substitute, plaintiffs could file a new action in Washtenaw Circuit Court seeking the same relief, and Travelers would agree, among other things, to waive any assertion of "the 1-year back provisions of MCL 500.3145" as a defense in the newly-filed action. The trial court subsequently entered a stipulated order allowing plaintiffs to substitute for Bourdage in the underlying case and to file a first amended complaint. In Count I of their first amended complaint, plaintiffs sought payment for the no-fault benefits due and owing for Bourdage's care, 12% statutory interest, and reasonable attorney fees. Plaintiffs also added claims for breach of contract (Count II), promissory estoppel (Count III), fraud and misrepresentation (Count IV), silent fraud (Count V), and quantum meruit (Count VI).

On April 24, 2019, Travelers moved for summary disposition with respect to Maple Manor Neuro under MCR 2.116(C)(10), contending that Maple Manor Neuro did not have a right of recovery because it had not contracted to provide medical services to Bourdage, had not provided medical services to Bourdage, and was not licensed to provide adult foster care, nursing home, or subacute care services. Travelers also sought summary disposition with respect to Maple Manor Rehab under MCR 2.116(C)(10), arguing that Bourdage had not "incurred" debt for purposes of

---

[1] The procedural history of this and related actions is complex; we will address it only to the extent pertinent to the issues before us on appeal.

[2] It appears that the parties entered into this stipulation in light of a then-upcoming trial date, to allow time to complete necessary discovery and to allow for a meaningful facilitation.

MCL 500.3107(1)(a) and, even if he had, Travelers was not liable for charges more than one year back from the date of the assignment, September 14, 2018. Travelers also moved to preclude evidence about the calculation and negotiation of the per diem rate charged for Bourdage's care.

In response, plaintiffs argued that Maple Manor Neuro was established to bill for the few patients at Maple Manor Rehab who required "catastrophic subacute rehabilitation services arising out of automobile accidents," that there was no requirement for the billing entity to be licensed, and that Maple Manor Neuro had a right of recovery because it was one of Bourdage's assignees. Plaintiffs also argued that Bourdage had indisputably incurred medical debt and had assigned to plaintiffs the right to recover PIP benefits in payment of that debt, and that Travelers had agreed to waive the one-year-back rule for the newly filed case. Plaintiffs also argued that Travelers had provided no basis for excluding evidence of Taylor's rate calculation and Travelers' agreement to the negotiated per diem rate charged for Bourdage's care and treatment.

After a hearing and additional briefing on the application of the one-year-back rule, the trial court entered an order denying summary disposition to Travelers and granting summary disposition in favor of plaintiffs under MCR 2.116(I). In addition to adopting plaintiffs' reasoning, the trial court made the following findings and conclusions:

> (1) that Defendant agreed to waive application of the one-year back rule; (2) that Defendant is summarily liable to pay [Plaintiffs'] bills as charged; (3) that Defendant has presented no evidence demonstrating a valid defense to the subject charges, including that the subject charges are not reasonable and necessary; (4) that Defendant contracted with Plaintiff[s] to pay [Plaintiffs'] charges in accordance with an agreed rate plan; and (5) that said payments are overdue.

The trial court found Travelers' remaining claims, defenses, and arguments without merit. The trial court denied reconsideration. Subsequently, plaintiffs moved the trial court for entry of a final order of judgment, and the trial court entered a final order and judgment as described. This appeal followed. Plaintiffs cross-appealed, arguing that the trial court had erred in calculating the amount of the attorney fee award and penalty interest.

## II. SUMMARY DISPOSITION

Travelers argues that the trial court erred by denying its motion for summary disposition and by granting summary disposition in favor of plaintiffs. We disagree regarding the trial court's denial of Travelers' motion, but agree regarding the trial court's grant of summary disposition, under MCR 2.116(I)(2), in favor of plaintiffs, with respect to issues not raised in the motion.

### A. DENIAL OF TRAVELERS' MOTION FOR SUMMARY DISPOSITION UNDER MCR 2.116(C)(10)

#### 1. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. See *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). We also review de novo whether the trial court properly interpreted and applied the relevant statutes. *Makowski v Governor*, 317 Mich App 434, 441; 894 NW2d 753 (2016).

-3-

Likewise, the proper interpretation of a contract and the legal effect or application of a contract are questions of law reviewed de novo on appeal. *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005).

Travelers sought summary disposition under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). A trial court evaluating a motion for summary disposition under Subrule (C)(10) "considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties . . . in the light most favorable to the nonmovant." *Maiden v Rozwood*, 461 Mich 109, 119-120; 597 NW2d 817 (1999). Summary disposition is appropriate when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). This Court's review of a trial court's summary disposition decision is limited to the evidence that had been presented to the court at the time the motion was decided. *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 475-476; 776 NW2d 398 (2009).

Summary disposition under MCR 2.116(I)(1) may be granted when the "affidavits or other proofs show that there is no genuine issue of material fact." Summary disposition under MCR 2.116(I)(2) may be granted if "it appears to the court that the opposing party, rather than the moving party, is entitled to judgment." Summary disposition under MCR 2.116(I) is appropriate only if basic due-process requirements are also satisfied. See *Lamkin v Hamburg Twp Bd of Trustees*, 318 Mich App 546, 550; 899 NW2d 408 (2017).

## 2. HOLD-HARMLESS AGREEMENT

Travelers argues that the Hold-Harmless Agreement executed between plaintiffs and Bourdage relieved Bourdage of legal liability for the costs of his treatment, and therefore, because Bourdage was not legally liable for plaintiffs' medical charges, the charges were not "incurred" under MCL 500.3107(1)(a). Further, Travelers contends that, because the charges were not "incurred," they were not "allowable expenses," and plaintiffs, as assignees of Bourdage, were not entitled to recover PIP benefits payable to Bourdage. We disagree.

MCL 500.3107(1)(a)[3] provides that PIP benefits are generally payable for "[a]llowable expenses consisting of reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." To recover PIP benefits for allowable expenses, a claimant must prove the following: "(1) the expense must be for an injured person's care, recovery, or rehabilitation, (2) the expense must be reasonably necessary, (3) the expense must be incurred, and (4) the charge must be reasonable." *Douglas v Allstate Ins Co*, 492 Mich 241, 259; 821 NW2d 472 (2012).

This Court has held that medical expenses are incurred for purposes of MCL 500.3107(1)(a) when the insured becomes legally obligated to pay those expenses. See

---

[3] MCL 500.3107 was amended in 2019, but the amendments of by 2019 PA 21 have no impact on the resolution of this appeal. Consistent with the parties' practices, references to the no-fault act are to the version currently in effect.

*Bombalski v Auto Club Ins*, 247 Mich App 536, 543; 637 NW2d 251 (2001). Absent a legal obligation, expenses are not incurred for purposes of the statute. See, e.g., *Duckworth v Continental Nat'l Indemnity Co*, 268 Mich App 129, 134-137; 706 NW2d 215 (2005) (holding that a Canadian citizen injured in a motor vehicle accident in Canada did not incur medical expenses under MCL 500.3107(1)(a) because his medical care was free under the Ontario Health Insurance Plan, he was never billed for the services, and he could not be held liable for those costs under Canadian law); *Bombalski*, 247 Mich App at 543 (holding that because the plaintiff's medical insurance paid a negotiated rate in satisfaction of medical expenses, the plaintiff was not liable for the full amounts charged by the medical providers and, therefore, had not incurred those expenses).

In this case, Bourdage incurred expenses when he accepted, received, and became liable for medical care and treatment from Maple Manor Rehab. On September 14, 2018, plaintiffs and claimant Angelina Bourdage, acting as Bourdage's conservator and guardian, executed an Assignment of Rights and a Hold-Harmless Agreement. The Assignment of Rights stated in relevant part:

> I, ANGELINA BOURDAGE, as Conservator, Guardian, Executor, Personal Representative, power of attorney, the estate, responsible party, and/or authorized agent for JAMES BOURDAGE, ("Assignor"), hereby assigns to [plaintiffs and others] ("Assignees") all rights, privileges and remedies to payment for health care services, products or accommodations ("services") provided by Assignees to Assignor to which Assignor is or may be entitled to under chapter 31 of the Insurance Code (MCL 500.3101, et seq.), the No-Fault Act.

> The assignment as set forth above is for all services provided to Assignor by Assignee prior to or at the time of Assignor's execution of this agreement for dates of service April 3, 2015 through August 29, 2016. Assignor hereby certifies that Assignor has incurred charges for services provided by the Assignee for which the rights, privileges and remedies for payment are hereby assigned. This assignment does not extend to any future benefits for which liability for payment has not been incurred.

> Assignor and Assignee agree that as consideration for this assignment, Assignees assume the burden, otherwise born by Assignor, to pursue payment for services rendered by the Assignees, from the insurance company or entity responsible to pay for such services. . . .

> This agreement shall further constitute a lien on any award in favor of Assignor by judgment, settlement, arbitration or otherwise, pertaining to any portion of the services rendered by the entities above, and Assignor consents to assign the portion of the award to each respective entity of Assignees above.

Once the assignment was made, plaintiffs "stood in Bourdage's shoes," and the shoes in which Bourdage had been standing were those of an injured person who had incurred expenses for his care, recovery, or rehabilitation. See *Coventry Parkhomes Condo Ass'n v Federal Nat'l Mtg Ass'n*, 298 Mich App 252, 256-257; 827 NW2d 379 (2012) ("It is well-established that an assignee stands in the shoes of an assignor, acquiring the same rights and being subject to the same defenses

as the assignor."). At the time of the assignment, Bourdage undisputedly possessed the right to seek recovery of no-fault benefits from Travelers to cover medical expenses incurred from his injury. The assignment transferred this right to recover that incurred debt to plaintiffs. The assignment did not completely relieve Bourdage of his obligation regarding payment of these expenses, as is evident in the statement that the assignment constituted a lien on any award pertaining to medical services provided by the assignees and the requirement that Bourdage assign any award received through judgment, settlement, arbitration, or otherwise to the assignees.

Nonetheless, Travelers argues that the Hold-Harmless Agreement executed along with the Assignment of Rights made Bourdage (and therefore his assignees) not liable for the expenses claimed. We disagree. The Hold-Harmless Agreement states in relevant part:

> The parties to this Agreement acknowledge there are pending litigations for the unpaid medical bills of James Bourdage who was a patient at Maple Manor for dates of service April 3, 2015 to August 29, 2016. The parties acknowledge that the unpaid medical bills of Maple Manor and all of its related entities are substantial.

> Two actions are currently pending in Washtenaw County Circuit Court Travelers Casualty and Surety Company Case No. 18-451-NF and Angelina Bourdage, as Conservator for James Bourdage Case No. 17-1178-NF, and any and all other cases.

> Maple Manor and all of its related entities shall seek recovery solely and exclusively from Travelers Casualty and Surety Company for the unpaid medical bills. Regardless of the outcome of these pending litigations, Angelina Bourdage and James Bourdage or their estate, shall be held harmless and they shall not be held liable for any unpaid medical bills. Maple Manor and all of its entities release, waives [sic], and forever discharges [sic] Angelina Bourdage, Angelina Bourdage as Conservator for James Bourdage, and James Bourdage from any and all liabilities, claims, damages, losses, damages [sic], indebtedness, lawsuits, costs, expenses, attorney fees that relate to Angelina Bourdage, Angelina Bourdage as Conservator for James Bourdage, and James Bourdage.

Travelers argues that the release language in the last sentence of the agreement effectively relieved Bourdage from liability and, therefore, caused debt that was indisputably incurred to become unincurred for purposes of MCL 500.3107(1)(a). Plaintiffs argue that the Hold-Harmless Agreement is simply a promise not to engage in "balance billing," i.e., not to bill Bourdage for medical expenses in excess of what plaintiffs might recover in their lawsuit(s) against Travelers. We conclude that the Hold Harmless Agreement is a covenant not to sue and therefore does not release Bourdage of all liability for incurred expenses.

"The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties. To this rule all others are subordinate. To arrive at a proper interpretation of particular language, the entire contract must be considered." *McIntosh v Groomes*, 227 Mich 215, 218; 198 NW 954 (1924). "If the language of the contract is clear and unambiguous, it is to be construed

according to its plain sense and meaning; but if it is ambiguous, testimony may be taken to explain the ambiguity." *New Amsterdam Cas Co v Sokolowski*, 374 Mich 340, 342; 132 NW2d 66 (1965).

The Michigan Supreme Court has explained the difference between a covenant not to sue and a release of liability as follows:

> There is a material difference between a covenant not to sue and a release. A release immediately discharges an existing claim or right. In contrast, a covenant not to sue is merely an agreement not to sue on an existing claim. It does not extinguish a claim or cause of action. The difference primarily affects third parties, rather than the parties to the agreement. [*J & J Farmer Leasing, Inc v Citizens Ins Co of America*, 472 Mich 353, 357-358; 696 NW2d 681 (2005).]

In this case, the Hold-Harmless Agreement identifies the actions pending in the Washtenaw Circuit Court concerning Bourdages's medical expenses, and hints at the possibility of other actions. The agreement then states that "Maple Manor and all of its related entities shall seek recovery solely and exclusively from [Travelers]" for these unpaid medical bills. Viewed in light of the Assignment of Rights, see *In re Estate of Koch*, 322 Mich App 383, 399; 912 NW2d 205 (2017), the Hold-Harmless Agreement does not extinguish the cause of action that Bourdage transferred to plaintiffs. *J & J Farmer Leasing*, 472 Mich at 357-358. The Hold-Harmless Agreement does not alter Bourdage's assignment to plaintiffs of the right to recover no-fault benefits for medical debt indisputably incurred; nor does it alter Bourdage's obligation to remit any award received through judgment, settlement, arbitration, or otherwise to the assignees. Through the Hold-Harmless Agreement, plaintiffs merely promised Bourdage that they would seek recovery of the medical expenses that Bourdage incurred solely and exclusively from Travelers, and that they would not seek to hold Bourdage liable. Accordingly, the Hold-Harmless Agreement was effectively a covenant not to sue.[4] *Id*.

We conclude that the Hold-Harmless Agreement did not extinguish the cause of action that Bourdage transferred to plaintiffs, nor did it relieve Bourdage of the responsibility to remit to plaintiffs any award pertaining to the cost of medical services they provided to him. Accordingly, the trial court did not err by denying summary disposition to Travelers on the question of whether Bourdage "incurred" allowable expenses for purposes of MCL 500.3107(1)(a).[5]

---

[4] The cases that Travelers cites in support of its argument are distinguishable; they involve claimants who, unlike Bourdage, never incurred medical expenses for treatment. See *Farm Bureau Gen Ins Co v Blue Cross Blue Shield of Mich*, 314 Mich App 12, 25; 884 NW2d 853 (2015); *Duckworth*, 268 Mich App at 134-137; *Bombalski*, 247 Mich App at 543.

[5] To the extent the trial court granted summary disposition in favor of plaintiff on this issue under MCR 2.116(I), we affirm that determination for the same reasons.

### 3. ONE-YEAR-BACK RULE

Travelers also argues that the one-year-back rule, MCL 500.3145, barred plaintiffs' recovery because the medical expenses claimed were incurred more than one year before the date of the Assignment of Rights, i.e., September 14, 2018. We disagree.

MCL 500.3145(2) allows a claimant to file an action to recover PIP benefits within one year after the most recent allowable expense was incurred, but prohibits the claimant from recovering "benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced." This Court did hold in *Shah v State Farm Mut Auto Ins Co*, 324 Mich App 182, 204-205; 920 NW2d 148 (2018), that the reference point for the one-year-back rule is the date the insured patient assigned his or her right to PIP benefits. However, this Court was clear that an assignment of rights results in a healthcare provider obtaining "only the rights [the injured party] actually held at the time of the execution of the assignment" and that an assignment could not result a *greater* right to recovery than that possessed by the assignor. *Id*. at 204-205. In this case, Bourdage had the right to recover benefits back to March 4, 2015. He obtained this right through the November 2017 stipulation in which Bourdage and Travelers agreed that the 2016 case would be dismissed without prejudice and refiled within seven days, and that the refiled case would have a one-year-back limitations date of March 4, 2015. The dispositive question is whether this right was transferred to plaintiffs. We hold that, regardless of whether the assignment transferred this right, the right was transferred when plaintiffs substituted for Bourdage in the pending litigation.

Travelers argues that Bourdage assigned rights that he possessed under the no-fault act and that the stipulation regarding the limitations date was not such a right; rather, it was a personal right arising from an agreement negotiated between counsel for Bourdage and Travelers. We conclude that even if the March 4, 2015 limitations date was not part of the "rights, privileges, and remedies" under the no-fault act that Bourdage assigned to plaintiffs, plaintiffs would nevertheless be entitled to the benefit of that agreement when they substituted for Bourdage.

Substitution of parties is governed by MCR 2.202, which states in relevant part:

> (B) Transfer or Change of Interest. If there is a change or transfer of interest, the action may be continued by or against the original party in his or her original capacity, unless the court, on motion supported by affidavit, directs that the person to whom the interest is transferred be substituted for or joined with the original party, or directs that the original party be made a party in another capacity. Notice must be given as provided in subrule (A)(1)(c).

> * * *

> (D) Substitution at Any Stage. Substitution of parties under this rule may be ordered by the court either before or after judgment or by the Court of Appeals or Supreme Court pending appeal. . . .

Read in tandem, MCR 2.202 (B) and (D) suggest that "[a] substituted party steps into the same position of the original party." See *Corbin v Blankenburg*, 39 F3d 650, 654 (CA 6, 1994)

(quotation marks and citation omitted).[6] Nothing in MCR 2.202 indicates that a substituted party would not be subject to the same stipulations and orders to which the original party was subject. In the present case, the trial court's November 15, 2017 order provided, among other things, "that the 'refiled' case shall have a " 'one year back' limitation date of March 4, 2015." When the case was refiled with Bourdage as the plaintiff, Travelers acknowledged the stipulation and order when, in its defenses and affirmative defenses to the complaint, it stated that "some or all of [plaintiffs'] claims [are] precluded pursuant to MCL 500.3145, as [they] may pertain to any claims for reimbursement of benefits prior to March 7 [sic], 2015." When plaintiffs substituted for Bourdage, they stepped into the same position as Bourdage, which included benefiting from the parties' agreement regarding the one-year-back limitations date. Travelers has provided no authority that would compel an outcome different than that indicated by the court rule.

For these reasons, we conclude that the trial court did not err by denying Travelers' motion for summary disposition under MCR 2.116(C)(10), because the one-year-back rule did not bar plaintiffs' claims for expenses incurred after March 4, 2015. *Barnard Mfg Co*, 285 Mich App at 369.[7]

### 4. MAPLE MANOR NEURO

Travelers also argues that the trial court erred by denying Travelers' motion for summary disposition with respect to Maple Manor Neuro. We disagree.

PIP benefits are payable for "[a]llowable expenses consisting of reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." MCL 500.3107(1)(a). "[A] physician, hospital, clinic, or other person that lawfully renders treatment to an injured person for an accidental bodily injury covered by personal protection . . . may charge a reasonable amount for the treatment . . . ." MCL 500.3157(1). Treatment "lawfully render[ed]" means treatment rendered in compliance with licensing requirements. See *Cherry v State Farm Mut Auto Ins Co*, 195 Mich App 316, 320; 489 NW2d 788 (1992).

Plaintiffs' first amended complaint referred to Maple Manor Rehab and Maple Manor Neuro collectively as "Maple Manor," and alleged that "Plaintiff Maple Manor provided reasonably necessary products, services, accommodations services, recovery services,

---

[6] Although we are not bound by the decisions of lower federal courts, this Court may find them persuasive. See *Abela v Gen Motors Corp*, 469 Mich 603, 606-607; 677 NW2d 325 (2004). In addition, we may look to federal caselaw interpreting similarly worded federal rules of civil procedure. See *White v Taylor Distributing Co, Inc*, 275 Mich App 615, 627; 739 NW2d 132 (2007). *Corbin* addressed Fed R Civ P 25(c), which states in relevant part that "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party."

[7] Again, to the extent the trial court granted summary disposition in favor of plaintiff on this issue under MCR 2.116(I), we affirm that determination.

rehabilitation" and that Travelers was obligated to "pay Plaintiff Maple Manor: for the reasonably necessary" services it provided to Bourdage.

There is no dispute that Maple Manor Neuro was incorporated for the sole purpose of providing accounting and billing services for patients treated at Maple Manor Rehab who were eligible for no-fault benefits, and that Maple Manor Neuro itself did not provide any healthcare services to Bourdage. There is also no dispute that Bourdage was treated by properly licensed healthcare professionals at Maple Manor Rehab, and that Maple Manor Rehab was properly licensed to provide the type of care and treatment Bourdage received. Because Maple Manor Rehab "lawfully render[ed] treatment" to Bourdage, Maple Manor Rehab was entitled to "charge a reasonable amount for the products, services and accommodations rendered." MCL 500.3157(1). Nothing in the statute prohibits a healthcare provider from billing for those charges through a separate entity or prohibits either of those entities from being an assignee of Bourdage's right to no-fault payments in satisfaction of those charges. Travelers has not argued that plaintiffs' internal corporate structure violates the no-fault act or that Maple Manor Neuro was billing for something other than the treatment Maple Manor Rehab lawfully rendered to Bourdage. We find no error by the trial court requiring reversal. *Barnard Mfg*, 285 Mich App at 369.

## B. GRANT OF SUMMARY DISPOSITION IN FAVOR OF PLAINTIFFS UNDER MCR 2.116(I)

Travelers also argues that the trial court erred by granting summary disposition in favor of plaintiffs on issues that Travelers did not raise in its motion for summary disposition and for which it had no notice that the trial court was considering granting summary disposition. We agree that, under the particular circumstances of this case, the trial court erred by granting summary disposition under MCR 2.116(I) in favor of plaintiffs to this extent.

Summary disposition under MCR 2.116(I) is appropriate only if basic due-process requirements are also satisfied. See *Lamkin*, 318 Mich App at 550. Travelers argues that the trial court violated its due-process rights because it had no notice that the trial court was contemplating summary disposition on the issues of liability and the reasonableness of plaintiffs' charges and services and, therefore, had no obligation to present evidence relative to these issues. Travelers' argument is not without merit. Nevertheless, this Court will not reach a constitutional issue if a case may be resolved on other grounds. *Pythagorean, Inc v Grand Rapids Twp*, 253 Mich App 525, 527; 656 NW2d 212 (2002). In the present case, we need not reach the constitutional issue because the trial court's grant of summary disposition to plaintiffs under MCR 2.116(I) was, to this extent, contrary to the requirements of the no-fault act.

The no-fault act is intended not only to "provide individuals injured in motor vehicle accidents assured, adequate and prompt reparation for certain economic losses," but also to provide these benefits at the lowest cost to the individual and the system." *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 333 Mich App 457, 479; 960 NW2d 186 (2020) (quotation marks and citation omitted). Accordingly, insurers are statutorily obligated to pay only a reasonable charged for allowed expenses, MCL 500.3107, and healthcare providers are allowed to charge only a reasonable amount for treatment, not to exceed the amount customarily charged for like treatment in cases not involving insurance, MCL 500.3157.

To recover PIP benefits, a claimant bears the burden of proving, among other things, that the charges were reasonable and the services were reasonably necessary. *Douglas*, 492 Mich at 259. As to who decides what is a reasonable charge,

> this Court has explained that healthcare providers necessarily make the initial determination of reasonableness by charging the insured for the services. Once [they] charge the insured, the insurer then makes its own determination regarding what is reasonable and pays that amount to plaintiffs. If the no-fault insurer does not pay all the charges, a healthcare provider may file suit to challenge the failure to fully pay the bills. It is the healthcare provider's burden to establish the reasonableness of the charges by a preponderance of the evidence. And a hospital's itemized bills and records do not, standing alone, satisfy the reasonableness requirement. [*Spectrum Health Hosps*, 333 Mich App at 483-484 (quotation marks and citations omitted).]

Ultimately, whether the amount charged by the healthcare provider is reasonable is generally a question of fact for a jury. *Id.* at 484.

Plaintiffs argue that the fact that the amounts charged for Bourdage's care were negotiated with Travelers renders the services *per se* necessary and the amount charged *per se* reasonable. We disagree. Plaintiffs cite no authority supporting the proposition that such a negotiated price is dispositive of the price's reasonableness or of the reasonable necessity of the services provided. Our Supreme Court has commented that it may be possible in some cases "for the court to decide the question of the reasonableness or necessity of particular expenses as a matter of law . . . ." *Nasser v Auto Club Ins Ass'n*, 435 Mich 33, 55; 457 NW2d 637 (1990). "[I]f it could be said with certainty that an expense was both reasonable and necessary, the court could make the decision as a matter of law." *Id.* (quotation marks and citation omitted). But the trial court in the present case did not make a finding of reasonableness. Nor was the issue significantly argued by the parties; in fact, in their response to Travelers' motion for partial summary disposition, plaintiffs asked the trial court to grant summary disposition in their favor under MCR 2.116(I) as to the issue of *liability*, but requested that the trial court order a trial on the amount of damages. In other words, even though plaintiffs requested that the trial court find that Travelers was *liable* for reasonable and necessary expenses incurred by Bourdage, the trial court went beyond that request to also grant summary disposition as to the amount of damages.

The trial court's order in this case relieved plaintiffs of their burden to prove that their charges were reasonable and their services to Bourdage reasonably necessary. Plaintiffs assert that the trial court deemed the rate agreed-upon by plaintiffs and Travelers "reasonable." However, the record shows that the trial court did not find plaintiffs' charged rate reasonable. Instead, the court concluded that Travelers had not presented any evidence that the rate was *not* reasonable. Moreover, there is no record evidence from which the trial court could have concluded that plaintiffs' charges were reasonable, as plaintiffs had yet to present any such evidence.

Plaintiffs argue that insurers and providers can agree on "reasonable charges" and that "[a]greements of that nature are enforceable." They cite in support of these assertions *Thomas v Mich Mut Ins Co*, 138 Mich App 117; 358 NW2d 902 (1984), and *Farm Bureau Gen Ins Co v Blue Cross Blue Shield of Mich*, 314 Mich App 12, 25; 884 NW2d 853 (2015). However, neither of

these cases involves a claimant seeking PIP benefits. Moreover, the trial court was not presented with evidence that Travelers had agreed that the rates charged and services provided were reasonable, or had somehow waived its right to challenge the reasonableness of charges and services incurred after it ceased paying for Bourdage's care. The trial court's decision relieved plaintiffs of the burden of proof that they must satisfy in order to recover PIP benefits for allowable expenses. See *Spectrum Health Hosps*, 333 Mich App at 480-481.

Although the expenses incurred by Bourdage may indeed be reasonable and necessary under the no-fault act, we conclude that it was error for the trial court to grant summary disposition under MCR 2.116(I) without allowing the parties to present evidence and argument on this issue and without making an explicit determination of reasonableness and necessity. Because the trial court's decision was contrary to the requirements of the no-fault act and to relevant caselaw, we reverse the trial court's grant of summary disposition in favor of plaintiffs under MCR 2.116(I) (except as noted elsewhere in this opinion), vacate the final order, and remand the matter further proceedings as to the reasonableness of plaintiffs' per diem charges and the reasonable necessity of the services provided.

### III. DENIAL OF TRAVELERS' MOTION TO EXCLUDE EVIDENCE

Travelers also argues that the trial court abused its discretion by denying its motion to exclude evidence as being "without merit," but without offering any factual or evidentiary analysis of its holding. We disagree. We review for an abuse of discretion a trial court's decision to admit or exclude evidence. *Nahshal v Fremont Ins Co*, 324 Mich App 696, 710; 922 NW2d 662 (2018). "An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes." *Zaremba Equip Inc v Harco Nat'l Ins Co*, 302 Mich App 7, 21; 837 NW2d 686 (2013).

Michigan's court rules require trial courts rendering decisions after bench trials to make "brief, definite, and pertinent" findings of fact and conclusions of law. MCR 2.517(A)(1). However "[f]indings of fact and conclusions of law are unnecessary in decisions on motions unless findings are required by a particular rule." MCR 2.517(A)(4); see also *Yakowich v Dep't of Consumer & Indus Servs*, 239 Mich App 506, 510 n 6; 608 NW2d 110 (2000). Travelers has not identified any court rule requiring a trial court to make findings of fact or conclusions of law when ruling on a motion to preclude evidence. Therefore, the trial court did not err by denying Travelers' motion without making specific findings of fact or conclusions of law.

Moreover, the trial court also did not abuse its discretion by denying Travelers' motion to exclude evidence. Travelers sought to exclude evidence of any agreement Travelers made to pay the rate negotiated by Maple Manor Rehab and Travelers, including Taylor's report or testimony concerning her determination of an appropriate per diem rate. Travelers argues that Taylor was not qualified to make such a determination. But even assuming that Taylor was not qualified to determine a per diem rate, Travelers fail to explain why her testimony should be excluded, given that Travelers presumably "ma[de] its own determination regarding what is reasonable and pa[id] that amount to plaintiffs." See *Spectrum Health Hosps*, 333 Mich App at 483-484.

Travelers also sought to exclude, as a sanction for alleged spoliation of evidence, testimony and evidence about plaintiffs' calculation of a per diem rate and any agreement between plaintiffs

and Travelers about a per diem rate. This Court reviews a trial court's decision to sanction a party for spoliation of evidence for a clear abuse of discretion. See *Brenner v Kolk*, 226 Mich App 149, 160; 573 NW2d 65 (1997). "An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes." *Zaremba Equip Inc*, 302 Mich App at 21. "[S]poliation may occur by the failure to preserve crucial evidence . . . ." *Bloemendaal v Town & Country Sports Ctr, Inc*, 255 Mich App 207, 212; 659 NW2d 684 (2002). A trial court has the authority to sanction a party for failing to preserve evidence that it knew or should have known was relevant before litigation began. *Id*. at 211. "[I]n a case involving the failure of a party to preserve evidence, a trial court properly exercises its discretion when it carefully fashions a sanction that denies the party the fruits of the party's misconduct, but that does not interfere with the party's right to produce other relevant evidence." *Brenner*, 226 Mich App at 161. An appropriate sanction may be the "exclusion of evidence that unfairly prejudices the other party . . . ." *Id*.

Travelers argues that plaintiffs spoliated evidence by failing to preserve Taylor's handwritten analysis of the various rates of rehabilitation facilities, compiled in 2015, and that the trial court abused its discretion by refusing to sanction plaintiffs by excluding any evidence that Travelers had ever negotiated or agreed to a per diem rate for Bourdage. We disagree. Even if plaintiffs had a duty to preserve Taylor's comparative analysis, the trial court did not abuse its discretion by dismissing Travelers' motion. Travelers has not shown how the failure to preserve the evidence benefited plaintiffs or prejudiced Travelers. The cases upon which Travelers relies to support its argument in favor of sanctions illustrate that spoliation sanctions are appropriate when the party that lost, destroyed, or failed to preserve the evidence benefits from the fact that the evidence is missing. See *Bloemendaal*, 255 Mich App at 214 (affirming the trial court's sanction on the basis of spoliation when the plaintiffs' disassembly of a motorcycle without testing a certain part that was critical to the plaintiffs' theory of liability, and the Travelers' theory of defense, made it impossible to duplicate the test because the material part had been removed); *Brenner*, 226 Mich App at 163-164 (affirming the trial court's determination that a sanction was appropriate because the plaintiff did not preserve for inspection the tires and seat belt that the plaintiff claimed failed and caused her to suffer injuries in a car accident).

In this case, although the comparative analysis may have been relevant to the reasonableness of plaintiffs' per diem rate, it was not dispositive, see *Spectrum Health Hosps*, 333 Mich App at 480-481. Moreover, although Travelers argues that the loss of Taylor's written analysis makes it impossible for it to challenge the information that plaintiffs used to induce them to first make payment, Travelers still had the opportunity to make its own determination of the reasonableness of plaintiffs' proposed per diem rate, and is still permitted to challenge the reasonableness of that rate, whether by comparison to other similar facilities or otherwise. The loss of a written list of the precise facilities Taylor used to arrive at her determination is simply not very significant, and in light of these circumstances, the trial court's denial of Travelers' motion to exclude evidence did not fall outside the range of principled outcomes. See *Zaremba Equip Inc*, 302 Mich App at 21.

## IV. CONCLUSION

For the foregoing reasons, we affirm that portion of the trial court's July 10, 2019 order denying Travelers' motion for summary disposition under MCR 2.116(C)(10), reverse that portion

of the same order granting summary disposition under MCR 2.116(I) in favor of plaintiffs (except as noted elsewhere in this opinion), vacate the trial court's December 7, 2020 final order and judgment, and remand the matter to the trial court for further proceedings. Considering our disposition of these issues, we need not address Travelers' other claims of error, or plaintiffs' cross-appeal.

Affirmed in part, reversed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Jane E. Markey
/s/ Mark T. Boonstra
/s/ Michael J. Riordan